GEO–PRO SERVICES, INC., Appellee,

v.

SOLAR TESTING LABORATORIES, INC., Appellant;
Chipukaizer et al., Appellees.

[Cite as *Geo-Pro Serv., Inc. v. Solar Testing Laboratories, Inc.* (2001), 145 Ohio App.3d 514.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–1317.

Decided Aug. 28, 2001.

---

516

*Fry, Waller & McCann Co., L.P.A., Barry A. Waller* and *L. Robert Thaxton,* for Geo–Pro Service, Inc.

*Leonard F. Carr, L. Bryan Carr* and *Frank P. Giaimo,* for Solar Testing Laboratories, Inc.

*David W. Douglas,* for David Jamison.

LAZARUS, Judge.

Defendant/third-party/plaintiff-appellant, Solar Testing Laboratories, Inc. ("Solar Testing") appeals from the September 6, 2000 judgment of the Franklin County Court of Common Pleas granting partial summary judgment to plaintiff-appellee, Geo–Pro Services, Inc. ("Geo–Pro"), and to third-party/defendant-appellee Enoch Chipukaizer ("Chipukaizer"), and made final by the agreed judgment entry of October 25, 2000. Solar Testing also appeals from the November 7, 2000 judgment granting summary judgment to third-party defendant-appellee David Jamison ("Jamison"). For the reasons that follow, we affirm.

Solar Testing is a testing service company headquartered in Cleveland, Ohio. At all relevant times, Steven Carter, director of the company's Columbus division, had full responsibility and authority to run the Columbus division. Chipukaizer, operations manager of the Columbus division, was a subordinate of Carter's and reported to him. In the course of running the Columbus division, Carter frequently subcontracted drilling work to outside companies. The Cleveland facility had several drilling rigs and employees who were able to operate them, but Carter had problems with the availability of the company-owned rigs and was dissatisfied with the Cleveland employees' performance. Carter also had problems dealing with outside drilling subcontractors because of availability and because Solar Testing had a reputation for being slow in paying its bills to subcontractors. Carter did not, however, believe that there was enough drilling work to justify putting a full-time drilling rig and crew in Columbus.

Jamison owned Central Star Drilling, a drilling company that, in the past, had done drilling work for Solar Testing. Chipukaizer approached Jamison with a plan to purchase a drilling rig from Jamison and form his own drilling company to do drilling for Solar Testing. Jamison expressed interest in forming a partnership with Chipukaizer. Jamison agreed to furnish equipment and train people, and Chipukaizer agreed to be responsible for the actual drilling work. Jamison and Chipukaizer agreed that they would each be fifty-percent owners in the new company. Prior to forming the company, Chipukaizer approached Carter to get his approval for the venture. Chipukaizer proposed that he would purchase a drilling rig to do the fieldwork for Solar Testing geotechnical projects in order to perform a better service for Solar Testing's clients. Carter viewed the venture as a possible solution to the problems he had in obtaining drilling services for the Columbus division. In a 1999 memo to his superiors at Solar Testing, Carter explained in his deposition his reasoning as follows: "I permitted this subcontractor arrangement to start because of a lack of any better solution at the time to my drilling woes."

In March 1995, Chipukaizer and Jamison incorporated Geo–Pro. Carter did not invest any money in Geo–Pro, but he controlled the parameters under which it was operated. Carter wanted to have the ability to control the availability of the rig, so that Solar Testing projects received priority. He also set the price Geo–Pro would receive on jobs to ensure that Solar Testing received approximately a twenty-percent profit on the drilling components of a job. For example, if Solar Testing charged the customer $10 per foot for drilling work, Geo–Pro would charge Solar Testing $8.33 per foot.

After several months of this arrangement, Carter began asking Chipukaizer for a plan to present to the owners of Solar Testing. In Carter's opinion, the arrangement was working both from a financial standpoint and from the standpoint of getting the work done. Chipukaizer, however, did not want Carter to tell his superiors of the arrangement. Carter testified in his deposition as follows:

"I wanted a package put together that I could take to George [Ata, officer of the company] and say, 'George, I can't support a full-time drilling rig; but here's something that I think is working. I would like to see it continue.'

"But I never got that from Enoch [Chipukaizer]. There were discussions, though, several times that I would tell Enoch, 'I've got to get this legitimized. I've got to get this legitimized.'

"Q. What would Enoch say to you?

"A. 'Well, if we tell them, they're going to say no.'

"Q. What did you say when he said that?

"A. I don't recall.

"Q. Why didn't you just call the owners up and tell them what was going on to legitimize it?

"A. Because of my personality.

"Q. Meaning?

"A. I'm Mr. Nice Guy. Mr. Softy. Mr. I don't want to hurt Enoch guy. I didn't say anything, and I made a very big mistake in not doing that. But it was my own personal weakness that kept me from doing that and, if you will, my loyalty to Enoch.

"He was a good employee, and I didn't want to hurt him. And I didn't want— you know, that was strictly the reason.

"Q. And it's your belief that while this relationship was going on, Geo–Pro's participation and services to [Solar Testing] were in the best interest of [Solar Testing]?

"* * * Objection [and discussion]

"* * *

"A. Personally my attitude after—when Geo–Pro started was that it was working and it was good for the division."

From 1995 until June 1999, neither Carter nor Chipukaizer told Solar Testing's Cleveland management about Chipukaizer's role in Geo–Pro. During this time, ninety-five percent of Geo–Pro's work was for Solar Testing.

In June 1997, Carter received $4,000 in cash from Chipukaizer. This was evidenced by a check dated June 26, 1997, signed by Chipukaizer, payable to Chipukaizer, marked "Dividend (S.C.)." Chipukaizer testified that the money was reimbursement for money Carter had lost in a pyramid scheme that Chipukaizer had gotten Carter involved in. Carter, however, denied that the money was for a pyramid scheme. Rather, he further testified that the $4,000 "didn't have anything to do with the existence of Geo–Pro," the $4,000 was not "for anything," and it was just that "Steve Carter was going to get $4,000 for being a good guy."

At various times, Chipukaizer and Carter both personally contacted Solar Testing's controller in attempts to obtain payment for Geo–Pro's outstanding invoices. As a result of nonpayment, Geo–Pro brought suit in Licking County against Solar Testing to recover approximately $287,000 in unpaid invoices. The matter was transferred to Franklin County, and Solar Testing filed an answer and counterclaim. Solar Testing also filed a third-party complaint against Chipukaizer and Jamison.

In its counterclaim and third-party complaint, Solar Testing set forth claims for civil conspiracy, tortious interference with business relationships, tortious and/or wrongful acquisition of property or benefits, fraud, conversion, embezzlement, theft, and a claim for an accounting.

On May 30, 2000, Solar Testing sought leave to amend its third-party complaint to add Carter as a new third-party defendant. By entry of June 5, 2000, the trial court denied that motion. On June 6, 2000, Geo–Pro and Chipukaizer moved for summary judgment on all claims. The basis of their motion for summary judgment was that Geo–Pro had been hired by Solar Testing to perform drilling services, that it had performed these services in a workmanlike manner, that it had not received any complaints about the services, and that it had not been compensated for the services. Solar Testing did not present evidence to directly dispute Geo–Pro's claims. Instead, Solar Testing argued that Geo–Pro was surreptitiously formed to undermine the business of Solar Testing, and that, in reality, Geo–Pro was the alter ego of Solar Testing and was performing Solar Testing work for Solar Testing Laboratories using Solar Testing resources.

Thus, according to Solar Testing, Solar Testing was actually completing the work themselves and no compensation was due to Geo–Pro.

On June 21, 2000, the trial court granted the motion in part and denied it in part. The trial court granted summary judgment in favor of Geo–Pro for the services it had performed in the amount of $287,275.95. The trial court also granted summary judgment in favor of Geo–Pro with respect to Solar Testing's claims for tortious interference, fraud, conspiracy, and an accounting. The trial court found that Carter approved the formation of Geo–Pro and, most important, had the managerial authority to run the Columbus division and to contract for drilling services. The trial court overruled the motion as to Solar Testing's claims for wrongful acquisition, embezzlement, conversion, and theft. These claims survived to the extent they alleged that Geo–Pro, Chipukaizer, and Jamison had used Solar Testing's resources to do non-Solar Testing work, as genuine issues of material fact existed as to those claims.

On August 16, 2000, Jamison filed a motion for summary judgment essentially adopting the same arguments as Geo–Pro's and Chipukaizer's. Solar Testing opposed the motion. On October 17, 2000, the trial court granted Jamison's motion on the same basis as the previous summary judgment motion. The parties then entered into an agreed judgment entry on the remaining claims in the case. This appeal followed, with Solar Testing assigning as error the following:

"1. The trial court erred in granting summary judgment to plaintiff Geo–Pro Services, Inc. and to third-party defendant Enoch Chipukaizer in view of the evidence that its claim is based on the unlawful usurpation of a Solar opportunity by its full-time employee, Chipukaizer and his co-conspirators, Geo–Pro, Jamison and Carter.

"2. The trial court erred in granting summary judgment to third-party defendant David Jamison.

"3. The trial court erred in denying defendant/appellant Solar Testing leave to join its Columbus operations manager, Steve Carter, as a party defendant, in view of the evidence of conspiracy and collusion disclosed in discovery."

■ To prevail on a motion for summary judgment, the moving party must demonstrate that, when the evidence is construed most strongly in favor of the nonmoving party, no genuine issue of material fact remains to be litigated and that it is entitled to judgment as a matter of law. Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. A genuine issue of material fact exists unless it is clear that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150, 151, 66

O.O.2d 311, 309 N.E.2d 924. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously, with any doubts resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138.

In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Supreme Court of Ohio stated that a party moving for summary judgment, on the ground that the nonmoving party cannot prove its case, has the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. Once the moving party satisfies this initial burden, the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. The issue presented by a motion for summary judgment is not the weight of the evidence but whether there is sufficient evidence of the character and quality set forth in Civ.R. 56 to show the existence or nonexistence of genuine issues of fact.

When an appellate court reviews a trial court's disposition of a summary judgment motion, the appellate court applies the same standard as that applied by the trial court. *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765. An appellate court's review of a summary judgment disposition is independent and without deference to the trial court's determination. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. Thus, in determining whether a trial court properly granted a summary judgment motion, an appellate court must review the evidence in accordance with the standard set forth in Civ.R. 56, as well as the applicable law. *Murphy, supra.*

In its first assignment of error, Solar Testing argues that the trial court erred in concluding that Carter had the apparent authority to outsource drilling work to Geo–Pro. Solar Testing argues that genuine issues of material fact exist as to whether Carter was acting with apparent authority and whether Chipukaizer was acting in good faith. Solar Testing further argues that this allegedly erroneous conclusion of the trial court was the underpinning of the entire decision granting summary judgment, and when one realizes a genuine issue of material fact exists as to this issue, the remaining claims must survive.

In order for a principal to be bound by the acts of its agent under the guidelines of apparent authority, the Supreme Court of Ohio has stated that evidence must affirmatively show "(1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of the facts and acting in good faith had

reason to believe and did believe that the agent possessed the necessary authority. The apparent power of an agent is to be determined by the act of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of the authority and not where the agent's own conduct has created the apparent authority." *Master Consolidated Corp. v. BancOhio Natl. Bank* (1991), 61 Ohio St.3d 570, 576–577, 575 N.E.2d 817, citing *Logsdon v. ABCO Constr. Co.* (1956), 103 Ohio App. 233, 241–242, 3 O.O.2d 289, 141 N.E.2d 216; *Ammerman v. Avis Rent A Car System, Inc.* (1982), 7 Ohio App.3d 338, 7 OBR 436, 455 N.E.2d 1041; *Blackwell v. Internatl. Union, U.A.W.* (1983), 9 Ohio App.3d 179, 9 OBR 289, 458 N.E.2d 1272.

Applying these standards to the facts of this case, we find that the evidence presented supports the finding of the trial court that Carter not only had apparent authority but that he had actual authority to subcontract for drilling services and to bind Solar Testing. The uncontroverted evidence before the trial court was that Carter was the head of the Columbus division and had full responsibility and authority to run the division in its entirety. In the past, Carter had often subcontracted the drilling portion of Solar Testing jobs due to dissatisfaction with the availability of the rigs from Cleveland and the quality of their work. Carter was Chipukaizer's immediate supervisor. Chipukaizer sought and received Carter's approval to set up Geo–Pro to perform drilling services for Solar Testing. While not the principal or an officer of Solar Testing, Carter, as director of the Columbus division, retained the authority to use the Cleveland rigs or to subcontract with others to perform drilling services. Chipukaizer's belief that Cleveland would veto the arrangement with Geo–Pro does nothing to alter the uncontroverted evidence that Carter had full authority to run the Columbus division in the manner he saw fit, and that included outsourcing drilling work. Nor does the fact that Chipukaizer thought that Cleveland management would not approve of the arrangement with Geo–Pro alter the uncontroverted evidence that Carter exercised his authority as director of the Columbus division to use Geo–Pro to solve numerous problems that the Columbus division had encountered with respect to drilling services.

We also agree with the trial court that, by relying solely on the deposition testimony of Carter, Chipukaizer, and Jamison, and failing to submit affidavits from its officers or other evidence of the type contemplated by Civ.R. 56, Solar Testing failed to substantiate its allegations or demonstrate that a genuine issue of material fact exists with regard to Carter's authority to enter into contracts for drilling services.

Solar Testing next argues that the trial court erred in granting summary judgment on its claim of tortious interference with business relationships. In its

counterclaim and in its third-party complaint, Solar Testing alleged that Geo–Pro was created for the purpose of wrongfully diverting drilling activities from Solar Testing to Geo–Pro.

 The tort of interference with a business relationship occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relationship with another. *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 14, 651 N.E.2d 1283. The elements of tortious interference with a business relationship are (1) a business relationship, (2) the wrongdoer's knowledge thereof, (3) an intentional interference causing a breach or termination of the relationship, and (4) damages resulting therefrom. *Chandler & Assoc., Inc. v. America's Healthcare Alliance, Inc.* (1997), 125 Ohio App.3d 572, 583, 709 N.E.2d 190. Solar Testing contends that the first two elements were clearly established, as the trial court focused solely on whether Geo–Pro had a privilege to contract for the drilling work of Solar Testing's customers.

Again, Solar Testing's failure to submit affidavits or other evidence of the type contemplated by Civ.R. 56 is fatal to their claim. Solar Testing failed to submit evidence of a genuine issue of material fact on the first prong of the test. The uncontroverted evidence before the trial court was that, at the time Solar Testing was created, the Columbus division did not have enough drilling work to support a full-time drilling rig and crew. Moreover, because of problems using the rigs and crew from Cleveland, Carter subcontracted the drilling component of Solar Testing projects to other drilling companies prior to the formation of Geo–Pro. Because the work was continually subcontracted, Solar Testing was unable to establish that it had ongoing relationships with its clients for drilling. Even after Chipukaizer was fired, and Solar Testing was no longer using Geo–Pro's services, Solar Testing continued to outsource its drilling work. At the time depositions were taken in the case, the Columbus division was still subcontracting approximately fifty percent of its drilling work.

Solar Testing is also unable to establish that it was damaged by Carter's decision to subcontract drilling work to Geo–Pro. The deposition testimony of Chipukaizer and Carter establishes that Solar Testing made a twenty-percent profit on the drilling services of Geo–Pro when in the past drilling had been a borderline financial operation. Solar Testing submitted no evidence to contest the testimony regarding a twenty-percent profit margin. The trial court did not err in granting summary judgment in favor of Geo–Pro on this claim.

 Solar Testing next argues that, in forming Geo–Pro with the appearance of being an outside entity, Chipukaizer, Carter, and Jamison misled Solar Testing into giving it valuable drilling work and perpetrated a fraud upon Solar Testing.

Upon review, we agree with the trial court that the same evidence discussed previously also precludes the fraud claim.

Fraud is defined as (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 475, 700 N.E.2d 859. In order to establish a claim of fraud, it is necessary for the party to prove all of the above elements.

With respect to the first element, a duty to disclose is a requirement if concealment of fact is alleged as a basis of fraud. *Fed. Mgt. Co. v. Coopers & Lybrand* (2000), 137 Ohio App.3d 366, 383, 738 N.E.2d 842. Here, Solar Testing has presented no evidence that Carter was under any obligation to inform Cleveland of his decision to utilize Geo–Pro. As the director of the Columbus division, Carter had the authority to run the division as he saw fit. In addition, there is uncontroverted evidence that Chipukaizer consulted with and obtained the approval of Carter to form Geo–Pro to do drilling work for Solar Testing. Having previously determined that Carter had the authority to grant such approval, and given the way Solar Testing delegated such authority to Carter, Carter's failure to inform Cleveland of his decision is irrelevant. Solar Testing has failed to establish the first element of fraud, concealment of a material fact, because it has not shown that Carter was under any duty to disclose such fact.

Solar Testing also claims that it was damaged by the alleged fraud because it lost the opportunity to develop its own drilling capacity in Columbus. However, Solar Testing has not submitted any evidence of the type contemplated by Civ.R. 56 in support of this theory. The trial court did not err in granting summary judgment in favor of Geo–Pro on the fraud claim.

Solar Testing claims that the trial court erred in granting summary judgment on its claims of embezzlement, conversion, and theft. The trial court denied summary judgment with respect to some aspects of these claims, in particular, those claims that Geo–Pro used Solar Testing resources on non-Solar Testing jobs. However, the trial court granted summary judgment with respect to claims that Geo–Pro used Solar Testing resources and facilities on Solar Testing jobs.

Under its misappropriation theory, Solar Testing claims that it is entitled to all the revenue from Geo–Pro jobs done for Solar Testing clients. The basis for these claims appears to be that Chipukaizer was really acting as a full-time Solar

Testing employee when Geo–Pro performed drilling work and, therefore, Geo–Pro and Chipukaizer wrongfully acquired revenues that belonged to Solar Testing. We disagree.

As discussed previously, Carter approved the formation of Geo–Pro under the conditions that he would control availability and pricing. Carter set the parameters by which Geo–Pro performed its services. Carter ensured that Solar Testing would make a twenty-percent profit from Geo–Pro's work. There is therefore no evidence that Geo–Pro or Chipukaizer wrongfully took possession of any Solar Testing property in the course of performing work. Thus, we agree with the trial court that it is of no consequence that Geo–Pro may have used Solar Testing resources and facilities on those jobs. In addition, Carter testified that Chipukaizer always put in a full forty-hour week of work for Solar Testing. There is no evidence that Geo–Pro or Chipukaizer converted Solar Testing property or fraudulently misappropriated goods. The trial court did not err in granting summary judgment as to these claims.

Solar Testing next argues that it is entitled to an accounting as to the proceeds of its employee's unlawful competition. Again, given the uncontroverted evidence that Carter had the authority and approved the formation of Geo–Pro for use on Solar Testing projects, there is no evidence of unlawful competition. Solar Testing did not provide any evidence that Carter was a shareholder or officer in Geo–Pro. Solar Testing claims that the $4,000 cash payment is evidence of a conspiracy to acquire Solar Testing business for Geo–Pro. However, Carter testified in his deposition that the $4,000 was not related to Geo–Pro, and Solar Testing did not supply any evidence to the contrary. Solar Testing is unable to establish any valid legal basis by which it would be entitled to an accounting.

Solar Testing's final claim is one of civil conspiracy. The tort of civil conspiracy is a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages. *Williams, supra,* at 475, 66 O.O.2d 311, 309 N.E.2d 924. An underlying unlawful act is required before a civil conspiracy claim can succeed. *Id.* The malice involved is " 'that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.' " *Id.,* quoting *Pickle v. Swinehart* (1960), 170 Ohio St. 441, 443, 11 O.O.2d 199, 166 N.E.2d 227.

Solar Testing has failed to establish a genuine issue of material fact with respect to any of these elements. Other than Solar Testing's unsubstantiated allegations, there is no evidence of any malice or underlying unlawful act on the part of Chipukaizer, Geo–Pro, Jamison, or Carter. Rather, the testimony in the

record is that Carter approved the formation of Geo–Pro, not to siphon profits from Solar Testing, but to solve problems the Columbus division had with getting drilling work done in a profitable and expeditious manner. Solar Testing has also failed to present any evidence, other than unsubstantiated allegations of "lost opportunity," of damages. Carter did not believe that the Columbus division could support a full-time drilling crew, and even after Geo–Pro had ceased doing business for Solar Testing, the evidence in the record is that the division was still outsourcing fifty percent of its drilling work. Thus, the trial court did not err in granting summary judgment on the claim of civil conspiracy. For all of these reasons, the first assignment of error is not well taken and is overruled.

In their second assignment of error, Solar Testing argues that the trial court erred in granting summary judgment to Jamison.

Jamison was a shareholder in Geo–Pro until he sold his interest to Chipukaizer. Without reiterating all the arguments discussed above in relation to Chipukaizer and Geo–Pro, suffice it to say that, with respect to Jamison, Solar Testing has not gone beyond unsubstantiated allegations in its pleadings to produce evidence of the type contemplated by Civ.R. 56 in support of its allegations against Jamison. Solar Testing makes much of the fact that Jamison did not notify Solar Testing's principals in Cleveland of the formation of Geo–Pro. Jamison's deposition, however, establishes that Jamison did not even know who the officers in Cleveland were, and that he had no relation to Solar Testing except as a former subcontractor. Jamison did testify however, that Carter knew about the formation of Geo–Pro. Solar Testing has not presented any facts or additional arguments that pertain to Jamison or that would differentiate its claims against Jamison from the claims against Chipukaizer. For the same reasons discussed in connection with assignment of error one, the second assignment of error is not well taken and is overruled.

In its third assignment of error, Solar Testing argues that the trial court erred in denying its May 30, 2000 motion for leave to amend its third-party complaint to add Carter as a third-party defendant. Solar Testing alleged that, after taking Carter's deposition, it learned that Carter knew of or profited from and/or encouraged Chipukaizer and Jamison to start Geo–Pro in order to compete with and/or otherwise pirate the business of Solar Testing. As a result of this alleged new information, Solar Testing sought to include new factual assertions, an additional and proper third-party defendant, and additional allegations against the new third-party defendant.

Civ.R. 15(A) provides that a party may amend its pleading by leave of court and that such leave "shall be freely granted when justice so requires." *Turner v. Cent. Local School Dist.* (1999), 85 Ohio St.3d 95, 99, 706 N.E.2d 1261.

While the rule allows for liberal amendment, motions should be refused if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party. *Id.* The primary consideration is actual prejudice to the opposing party because of the delay. *Schweizer v. Riverside Methodist Hosp.* (1996), 108 Ohio App.3d 539, 546, 671 N.E.2d 312; *Fed. Mgt. Co., supra,* at 377, 738 N.E.2d 842. A trial court's decision to grant or deny a motion for leave to amend a pleading is discretionary and will not be reversed absent an abuse of discretion. *State ex rel. Askew v. Goldhart* (1996), 75 Ohio St.3d 608, 610, 665 N.E.2d 200. An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Id.*

Here, the trial court's basis for denial was that adding a new party and new factual allegations at such a late date, particularly given the parties' history of dilatory conduct with respect to discovery, would only cause a delay in the October 26, 2000 trial date. At all times during the pendency of the litigation, Carter remained the director of the Columbus division. He outlined his reasoning about the Geo–Pro situation and the alleged kickback in a memo dated July 9, 1999. Thus, the facts underlying the proposed amended complaint were known to Solar Testing well before it sought to file an amended complaint, leaving unexplained, its delay in seeking to amend.

■ Amendments must be sought in good faith and should not be utilized as a mere delaying tactic. *Solowitch v. Bennett* (1982), 8 Ohio App.3d 115, 8 OBR 169, 456 N.E.2d 562. Solar Testing had knowledge of the information relevant to the amended complaint for almost a year before seeking leave to amend. Given these circumstances, we do not find that it was an abuse of discretion for the trial court to deny Solar Testing's motion for leave to amend its complaint. The third assignment of error is not well taken and is overruled.

Based on the foregoing, Solar Testing's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

Brown and Kennedy, JJ., concur.