OPINION
{¶ 1} Plaintiff-appellant, L. Randy Zacks ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment to defendants-appellees, Bethany Beck, as Executor of the Estate of Jerry Alden Beck, and Vanguard Productions, Inc. (collectively "appellees").
 {¶ 2} Jerry Alden Beck ("Beck"), was President of Vanguard Productions, Inc., ("Vanguard Productions"), a corporation operating as a media booking and purchasing company, until the date of his death, October 21, 2001. Beck was also a one-third owner in Vanguard Media, Inc. ("Vanguard Media"). Appellant is a former employee of Vanguard Productions and one-third owner of Vanguard Media, which has been dissolved and is currently defunct with no assets. Appellant also owns a sole proprietorship, Video Images. Appellant was terminated from Vanguard Productions in March 1999, and upon his termination, went to work full-time at Video Images.
 {¶ 3} Bobby Layman Chevrolet, Inc. ("Layman"), was a client of Vanguard Productions during appellant's tenure at Vanguard Productions, which was from approximately 1988 until March 1999. At some point after appellant's termination from Vanguard Productions, Layman elected to terminate its relationship with Vanguard Productions and become a client of Video Images. Vanguard Productions remained in possession of Layman's property, namely a number of tapes of completed media spots ("tapes"). Because of Vanguard Productions' refusal to relinquish possession of the tapes, Layman filed a third-party complaint against Vanguard Productions, and recovered the tapes approximately one year later.[1]
In May 1999, Layman terminated a portion of its business relationship with Video Images, and sometime thereafter terminated all business relationships with Video Images.
 {¶ 4} On October 18, 2002, appellant filed a verified complaint against appellees and Vanguard Media containing 11 causes of action. On June 24, 2003, appellees and Vanguard Media moved for partial summary judgment as to appellant's claims for defamation and conspiracy to commit defamation. On November 7, 2003, appellees filed a motion for summary judgment on all remaining counts contained in the complaint, namely, tortious interference with a business relationship, breach of fiduciary duty, two counts of trespass to property, two counts of conversion, conspiracy to deprive appellant of his ownership interest, unjust enrichment and punitive damages. On January 5, 2004, the trial court issued two separate decisions, one granting appellees' and Vanguard Media's motion for partial summary judgment, the other granting appellees' motion for summary judgment on all remaining counts of the complaint. The trial court filed its judgment entry on January 21, 2004. Pursuant to the trial court's judgment entry, summary judgment was granted in favor of appellees on all counts and five counts remained pending against Vanguard Media. On November 23, 2004, appellant dismissed, without prejudice, the remaining claims against Vanguard Media. This appeal followed.
 {¶ 5} Appellant raises the following two assignments of error:[2]
ASSIGNMENT OF ERROR NO. 1.
THE FRANKLIN COUNTY COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR IN GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF APPELLEE WITH RESPECT TO APPELLANT'S FIRST CAUSE OF ACTION STATING A CLAIM FOR TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP.
ASSIGNEMENT OF ERROR NO. 2.
THE FRANKLIN COUNTY COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR IN GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF APPELLEE WITH RESPECT TO APPELLANT'S FOURTH CAUSE OF ACTION STATING A CLAIM FOR BREACH OF FIDUCIARY DUTY.
 {¶ 6} Civ.R. 56(C) states that summary judgment shall be rendered forthwith if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party.Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
 {¶ 7} Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 629, citing Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 65-66.
 {¶ 8} The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The moving party may not fulfill its initial burden simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Id. Rather, the moving party must support its motion by pointing to some evidence of the type set forth in Civ.R. 56(C), which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. Id. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. Id. However, once the moving party satisfies its initial burden, the nonmoving party bears the burden of offering specific facts showing that there is a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings, but, instead, must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Civ.R. 56(E); Henklev. Henkle (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791.
 {¶ 9} Appellate review of summary judgments is de novo. Koos v. Cent.Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588; MidwestSpecialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6, 8. We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. See Dresher, supra; Coventry Twp. v. Ecker
(1995), 101 Ohio App.3d 38, 41-42.
 {¶ 10} In his first assignment of error, appellant argues that summary judgment was improper because genuine issues of material fact remain regarding his claim for tortious interference with a business relationship. However, appellant further argues that even though he met his reciprocal burden and established that a genuine issue of material fact existed, he was not required to do so because the trial court erred in finding that appellees met their initial burden under Civ.R. 56, and demonstrated the absence of a genuine issue of material fact. In other words, appellant is arguing that the trial court went directly to an analysis of appellant's reciprocal burden without appellees having satisfied the initial burden imposed by Civ.R. 56, thus rendering summary judgment inappropriate in this case.
 {¶ 11} The basis of appellant's tortious interference with a business relationship claim stems from appellant's allegation that Layman terminated business dealings with appellant because of appellees' withholding of Layman's property, i.e., the tapes. As indicated previously, Layman recovered the tapes after initiating a third-party complaint against appellees. The initial action in which the third-party complaint was filed was actually a collection action initiated by appellees against Layman for unpaid invoices. There is evidence in the record suggesting that appellees withheld Layman's property because appellees believed that Layman owed them payment for services. Aside from this suggestion, however, what transpired between appellees and Layman is not clear. It is, however, appellant's position that the "inability of [appellant] to retrieve Layman's tapes from Beck and/or Vanguard Productions" and "the unlawful conversion of the videotapes" are the reasons Layman terminated its business relationship with appellant.
 {¶ 12} The tort of interference with a business relationship occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relationship with another. A B-Abell Elevator Co. v. Columbus/Cent.Ohio Bldg. Constr. Trades Council (1995), 73 Ohio St.3d 1, 14. The elements of tortious interference with a business relationship are: (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom. Geo-Pro Services,Inc. v. Solar Testing Laboratories, Inc. (2001), 145 Ohio App.3d 514,525, citing Chandler Assoc., Inc. v. American's HealthcareAlliance, Inc. (1997), 125 Ohio App.3d 572.
 {¶ 13} Appellees assert that the evidence in the record does not support the allegation, nor satisfy the required elements of tortious interference with a business relationship. In support of their position, appellees rely on appellant's deposition testimony and documents, which appellees argue affirmatively demonstrate that Layman ended the business relationship with appellant for business purposes, and not due to any interference from Beck. Additionally, appellees submitted an affidavit stating that neither Beck nor any of the appellees interfered with appellant's relationship with Layman. {¶ 14} In a letter from Layman to appellant dated May 11, 1999, Layman stated:
Dear Randy:
As of May 1, 1999, Bobby Layman Chevrolet respectfully declines your marketing services. Together, we have enjoyed some successes with our marketing ventures. Some, we have not.
At this time, the dealership is going to attempt some different marketing strategies . . . on our own. You are a businessman, and you know that sometimes a new approach — a new beginning can be beneficial. Certainly, our decision to go in a new direction is nothing of a personal nature . . . this is purely a business decision. We thank you for your interest in Bobby Layman Chevrolet and your efforts for assisting in marketing the dealership during your tenure.
Sincerely,
Robert A. Layman
 {¶ 15} Appellees contend that Layman's declination of appellant's services being "purely a business decision" is confirmed by appellant's deposition testimony, wherein appellant admits he had no idea how long Layman planned to utilize his services. During his deposition, appellant testified:
Q. Do you know how long he would have kept you on if the tape ordeal didn't happen?
A. I'd like to believe that I had a good relationship with Mr. Layman and that I'd still be working for him.
Q. But you have no idea?
A. No.
(Zack's Tr. at 79.)
 {¶ 16} Additionally, during appellant's deposition, the following exchange took place:
Q. Well, you can identify that, if you would. Do you recognize this?
A. Yes.
Q. What is it?
A. It's a review of my conversation with Mr. Layman where we terminated the relationship and specified when my commission would end and what I would be paid on it.
Q. So it's a summary of your conversation with Mr. Layman?
A. Yes.
Q. Is there anything in here that talks about the tapes?
A. No. This, however, does only terminate my relationship as a media buyer. It continues to say that I will continue to produce television and radio spots for you.
Q. And did you?
A. Yes. For a short period of time, and then he terminated that relationship as well.
Q. Did he give you a reason?
A. My recollection is it was the tape ordeal.
Q. Anything in writing to that effect?
A. No.
(Id. at 78-79.)
 {¶ 17} After a review of the record, we find that appellees did meet their initial burden under Civ.R. 56 as appellees set forth specifically which areas of appellant's claim raise no genuine issue of material fact. After a proper motion for summary judgment is made, "the nonmoving party must do more than supply evidence of a possible inference that a material issue of fact exists; it must produce evidence of specific facts which establish the existence of an issue of material fact." Carrier v.Weisheimer Companies, Inc. (Feb. 22, 1996), Franklin App. No. 95AP-488, citing Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108. "It is the nonmoving party's responsibility to produce evidence on any issue for which it bears the burden of production at trial." Id., citingMitseff v. Wheeler (1988), 38 Ohio St.3d 112.
 {¶ 18} Appellant contends that he "learned" that the final termination of his relationship with Layman was due to appellees' withholding of videotapes. (Mar. 28, 2005, Reply Brief, at 3.) However, even if appellant's testimony creates an issue of fact regarding the reason that Layman terminated the business relationship with appellant, his testimony does not raise an issue of fact regarding whether or not there was an "intentional interference causing a breach or termination of the relationship," and "damages resulting therefrom." Geo-Pro Services,Inc., supra.
 {¶ 19} Not every act of interference is intentional. Barno v. EmpireGen. Life Ins. Co. (Nov. 10, 1983), Cuyahoga App. No. 46499. In Barno,
the plaintiff was an insurance agent that specialized in group coverage for members of firefighters unions. The agent kept the union's premiums and commingled his personal and commercial accounts. The insurance company notified the unions that the agent would no longer be working for them and that the unions could deal directly with the insurance company. Said notification resulted in a precipitous loss of business to the agent. The agent commenced an action, which included a claim for tortious interference with a business relationship, against the insurance company. In affirming the trial court's decision granting summary judgment to the insurance company, the court stated "[n]ot every act of interference is intentional," and that there was no evidence that the insurance company did not want the agent to succeed. Id.
 {¶ 20} In the present case, appellant testified at deposition as follows:
Q. Did Layman stop working with you after or before these tapes were returned?
A. They stopped working with me before the tapes were returned.
Q. What's the time line, as you remember it?
A. I continued after leaving to buy media for him and produce commercials, and he kept saying, "Get my tapes back." And I said, "I can't go in there, Jerry. They'll arrest me." "Well, you go in there and get them."
* * *
Q. And at some point he terminated you because of this?
A. Because of the failure to return the tapes and the aggravation factor — and the aggravation that he suffered trying to get his tapes back.
Q. And, he told you this?
A. Yes. He told me that he had given the tapes to me personally and he expected me to get the tapes back, because I'm the one who had taken them out of his facility.
(Zack's Tr. at 74-75.)
 {¶ 21} While the failure of appellant to retrieve the tapes that he removed from Layman's facility may have been a contributing factor in Layman's decision to not utilize appellant's services, appellant has not provided any evidence that appellees' intentional interference caused the termination of the business relationship, which is the third required element of a tortious interference with a business relationship claim. See Barno; Geo-Pro Services, Inc., supra. Obviously, interference alone without an indicia of it being intentional and directed at the appellant is not enough to survive a motion for summary judgment on the tortious interference with a business relationship claim.
 {¶ 22} Since appellees met their initial burden under Civ.R. 56, appellant is required to do more than supply evidence of a "possible inference" that a material issue of fact exists. Carrier, supra. However, appellant has supplied only speculation through his self-serving statements that the termination of the business relationship between he and Layman was due to something other than Layman's desire to engage in a "new approach," a "new beginning," and to go in "a new direction." A review of the record establishes that the evidence submitted at best creates an inference of a material fact. This is not enough, thus the trial court properly granted summary judgment to appellees on this claim.
 {¶ 23} Accordingly, appellant's first assignment of error is overruled.
 {¶ 24} In his second assignment of error, appellant argues that the trial court erred in granting summary judgment to appellees on appellant's claim for breach of fiduciary duty. Appellant alleges that appellees breached a fiduciary duty to appellant by depriving him of his ability to be involved in the business operations of Vanguard Media, of which he was a one-third owner. The breach is alleged to have occurred between March 1999 and May 1999.
 {¶ 25} In March of 1999, appellant was terminated from Vanguard Productions. In May 1999, Vanguard Media was dissolved and a plan of liquidation was instituted. Appellant, as well as the other two co-owners, signed the company's minutes reflecting these actions. Other than merely alleging that Beck deprived appellant from participating in Vanguard Media's operations, appellant has not explained from what he was excluded and/or how he was damaged thereby.
 {¶ 26} Appellees have provided this court with the May 1999 minutes of action, that appellant signed, which provided for the dissolution of Vanguard Media. Further, appellees have directed us to evidence demonstrating that appellant was paid for commissions after the dissolution of Vanguard Media. While "corporations and their officers and directors occupy a fiduciary relationship with corporate shareholders," appellant has failed to show how such applies to this case, how such was breached, and how appellant was damaged thereby. Thompson v. Cent. OhioCellular, Inc. (1994), 93 Ohio App.3d 530. In the cases relied upon by appellant, namely this court's decision in Morrison v. Gugle (2001),142 Ohio App.3d 244, the complaining party was actually terminated from the corporation resulting in a loss of her wages, which frustrated her purpose in the corporate venue. Said case bears little resemblance to the facts before this court in which appellant's employment was terminated from one corporation, i.e., Vanguard Productions, by Beck, and two months later, appellant signed a plan of action to permit the dissolution of a corporation of which he was part owner, i.e., Vanguard Media, with Beck and another co-owner. From the record, it appears that the only action taken during the two-month time frame at issue was the act of dissolving Vanguard Media, which appellant was directly involved in, as evidenced by appellant's signature on the minutes of action providing for Vanguard Media's dissolution.
 {¶ 27} Appellant also alleges that he received no funds at the time of the dissolution of Vanguard Media. Again, however, appellant relies on restatements of the allegations in the complaint in an attempt to avoid summary judgment. Vida Burns, who maintained the books and records for Vanguard Media, testified that appellant was paid for commissions after the dissolution of Vanguard Media. (Burns Depo. at 48-49, 60-61.) Appellant submitted an affidavit stating "I was also not paid the amounts owed to me by Vanguard Media, and received no funds at the time of its dissolution. At the time of plaintiff's termination at Vanguard Productions, I believe that Direct Media owned assets in the approximate value of $30,000.00." (Ex. A to Nov. 25, 2004 Memorandum Contra, at 2.)
 {¶ 28} While appellant states in his affidavit that he received no funds at the time of Vanguard Media's dissolution, it is unclear as to exactly what "funds" he is referring. According to the arguments in his briefs, he is referring only to commissions that he believed were owed to him after the dissolution of the company. This is evidenced by the following phrase that appears in both appellant's initial and reply briefs that, "even after the dissolution, Mr. Zacks received no funds despite the Plan of Liquidation attached to Plaintiff's Motion for Summary Judgment as Exhibit E, indicating that Mr. Zacks was to receive commissions on outstanding amounts owed by customers." (Feb. 22, 2005 Brief, at 12 and Mar. 28, 2005 Reply Brief, at 6.)
 {¶ 29} As stated previously, Vida Burns testified that commissions were paid to appellant after Vanguard Media's dissolution. In addition, during his deposition, appellant testified that has no knowledge of the assets at the point of dissolution, despite the fact that he "think[s] there was some accounting given, but [he didn't] recall off the top of [his] head exactly." (Zacks Tr. at 92.) Thus, appellant cannot direct this court to any evidence that there was anything that he was entitled to at the time of the dissolution. The only evidence is appellant's self-serving affidavit that states he was not paid amounts owed to him by Vanguard Media and that he believes that the company had assets of approximately $30,000 at the time he was terminated from Vanguard Productions, which was months prior to the dissolution of Vanguard Media. However, a party cannot avoid summary judgment solely by submitting a self-serving affidavit containing nothing more than bare contradictions of the evidence offered by the moving party. Bell v.Beightler, Franklin App. No. 02AP-569, 2003-Ohio-88. As such, a party's unsupported and self-serving assertions offered by personal affidavit and without corroborating evidentiary materials, will not be sufficient to demonstrate a material issue of fact precluding summary judgment. Id. Such possibility, that appellant is entitled to additional "funds," based only on appellant's belief do not create a genuine issue of material fact, but rather require a trier of fact to render a decision based upon mere speculation. It is well-settled that "a jury verdict may not be based upon mere speculation or conjecture." Westinghouse Elec. Corp. v.Dolly Madison Leasing Furniture Co. (1975), 42 Ohio St.2d 122, 126. To allow this case to proceed would not only invite a trier of fact to speculate, but would require such. Appellant must do more than supply evidence of a possible inference that a material issue of fact exists. Because we find that appellant has failed to meet his reciprocal burden of Civ.R. 56, we find that there is no genuine issue of material fact on appellant's breach of fiduciary claim.
 {¶ 30} Accordingly, appellant's second assignment of error is overruled.
 {¶ 31} For the foregoing reasons, appellant's two assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
French, J., concurs.
Bryant, J., concurring separately.
[1] The suit in which Layman filed a third-party complaint was a collection action for unpaid invoices against Layman actually initiated by Vanguard Productions.
[2] Via two different decisions, the trial court effectively granted summary judgment in favor of appellees, Bethany Beck, as Administrator of the Estate of Jerry Alden Beck, and Vanguard Productions on all of appellant's claims. However, the only issues raised on appeal relate to appellant's claims for tortious interference with a business relationship and breach of fiduciary duty; therefore, these are the only claims that we address.