[Cite as *Pertoria, Inc. v. Bowling Green State Univ.*, 2012-Ohio-6315.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

PERTORIA, INC.

    Plaintiff

    v.

BOWLING GREEN STATE UNIVERSITY

    Defendant

Case No. 2010-03967

Judge Alan C. Travis

## DECISION

{¶ 1} Plaintiff brought this action alleging breach of contract and tortious interference with business relationships.[1] The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} The facts of this case are largely undisputed. Plaintiff, Pertoria, Inc., an Ohio corporation, owns and operates several "Wendy's®" franchise restaurants. On October 17, 2001, plaintiff and defendant entered into a written operating agreement and a lease whereby plaintiff agreed to operate a Wendy's® restaurant in defendant's newly renovated student union. The operating agreement required plaintiff to install specially programmed debit card readers which would enable students to pay for purchases from plaintiff's restaurant with meal plan debit and "BiG" charge cards. Plaintiff installed such card readers at a cost of $25,000. Rebecca Williams, president

---

[1] On October 26, 2010, the court dismissed all plaintiff's claims except for those based upon breach of contract and tortious interference with business relationships. The court also limited plaintiff's recovery to those claims that accrued on or after March 4, 2008.

of Pertoria, Inc., testified that defendant did not allow plaintiff to open until the debit card readers were installed.

{¶ 3} Both the operating agreement and lease had an initial term of five years, and each was renewed for an additional five-year term, to expire on May 12, 2012. Plaintiff asserts that it renewed the operating agreement and lease with the understanding that defendant would continue to allow students to use their meal plan debit cards to make purchases at the restaurant.

{¶ 4} Throughout the first five-year period of the contract, defendant made several changes to the pre-paid meal plan debit cards. When Wendy's® initially opened at the student union in 2001, plaintiff had full access to the student meal plan dollars. Shortly thereafter, defendant introduced "flex funds," which is a percentage of meal plan dollars available for use by students at the student union. Additional changes included restrictions on when students could use their meal plan debit cards at Wendy's® and prohibitions on the purchase of Wendy's® gift certificates with the meal plan debit cards.

{¶ 5} In 2007, defendant required plaintiff to install new card readers capable of interfacing with defendant's new university software program. Plaintiff again installed the required readers at a cost of $10,000.

{¶ 6} In 2008, at the request of the former associate vice president of student affairs, Dr. Joe Oravecz, the operations of dining services was reviewed by the National Association of College and University Food Services.[2] According to Dr. Edward Whipple, defendant's vice president of student affairs, around the same time, defendant began considering entering into an agreement with Chartwells to operate dining services.[3] Dr. Whipple explained that such an agreement was necessary to address defendant's advertising, staff training, and catering needs. Williams testified that Chartwells is a part of Compass Group, which also operates several franchise restaurants including Wendy's®.

{¶ 7} In 2008, Dr. Whipple asked the assistant director for business affairs, Susan Swinford, to chair the dining advisory board, which oversees dining services. Swinford explained that the board is composed of approximately 25 faculty, staff, and students. According to Swinford, Dr. Oravecz requested that the dining advisory board make

---

[2]Dr. Oravecz did not testify at trial.

recommendations regarding the student meal plan and Wendy's® use of student meal plan money, estimated to be $125,000. Dr. Whipple stated that students who do not use all of their student meal plan money forfeit the remaining balance of their money to defendant at the end of the academic year.

{¶ 8} Pursuant to Oravecz's request, the dining advisory board met and discussed possible solutions regarding the loss of meal plan money to Wendy's®. (Plaintiff's Exhibit M.) Swinford explained that, in 2009, Wendy's® was the only vendor not owned by dining services. Swinford testified that one of the several ideas presented at the meeting was to prohibit Wendy's® from accessing student meal plan money. The notes from the meeting state that "Wendy's has option to renew-make difficult w/ these changes." *Id.* On April 6, 2009, led by Dr. Oravecz, the advisory board held a second meeting. The topic centered on ways to "reinvest" student meal plan dollars into the university dining services. (Plaintiff's Exhibit N.) Swinford testified that again, one of the options presented was to prevent Wendy's® from accepting meal plan money, making Wendy's® the only vendor in the student union unable to accept meal plan money.

{¶ 9} The advisory board met a third time on April 28, 2009. Again, the discussion centered on diverting meal plan money from Wendy's® to dining services. (Plaintiff's Exhibit P.) Swinford testified that the dining advisory board members were asked to vote for one of several proposed options. (Plaintiff's Exhibit Q.) On April 29, 2009, Swinford reported to Dr. Whipple that the board recommended eliminating the use of meal plan funds at Wendy's®. (Plaintiff's Exhibit R.)

{¶ 10} On May 1, 2009, Dr. Whipple informed plaintiff via letter that beginning July 1, 2009, flex funds would no longer be available for use at the restaurant. Plaintiff asserts that flex funds are accepted at every eatery in the student union except Wendy's® because defendant now owns every other restaurant in the student union. Dr. Whipple confirmed that Wendy's® is the only eatery in the student union not owned by defendant and that Wendy's® is the only eatery in the student union that is unable to accept student meal plan dollars. According to Williams, between 2003 and 2009,

---

[3]Dr. Whipple testified by deposition. See Plaintiff's Exhibit Y.

plaintiff's sales averaged $1.7 million; however, in 2010 and 2011, sales dropped to $700,000 and $800,000 respectively.[4]

{¶ 11} Williams stated that Wendy's® has elected not to renew the lease and will vacate its space in the student union when the lease expires on May 12, 2012. According to Swanka, Chartwells will be occupying the space after Wendy's® vacates, although she did not believe the new restaurant would be a Wendy's® franchise. Plaintiff alleges breach of contract and tortious interference with business relationships.

**BREACH OF CONTRACT**

{¶ 12} The elements of a claim for breach of contract are the existence of a contract, performance by plaintiff, breach by defendant, and damages or loss as the result of the breach. *Samadder v. DMF of Ohio, Inc.*, 154 Ohio App.3d 770, 2003-Ohio-5340 (10th Dist.). Defendant asserts that plaintiff has failed to state a claim for breach of contract in that plaintiff cannot point to a specific provision of the written agreement that defendant breached. However, in Ohio, there is a common law duty of good faith which is implied in the performance of contracts. *Interstate Gas Supply, Inc. v. Calex Corp.*, 10th Dist. No. 04AP-980, 2006-Ohio-638; *B-Right Trucking Co. v. Interstate Plaza Consulting*, 154 Ohio App.3d 545, 2003-Ohio-5156 (7th Dist.). A covenant of good faith in contract is an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties. *Ed Schory & Sons v. Francis*, 75 Ohio St. 3d 433, 443-444, 1996-Ohio-194. Good faith requires that neither party "do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Interstate Gas Supply, supra,* quoting *Kirke La Shelle Co. v. Paul Armstrong Co.,* 263 N.Y. 79, 87, 188 N.E. 163 (N.Y. App.1933).

{¶ 13} Pursuant to the operating agreement, Wendy's® was required to "[i]nstall and maintain charge and debit card readers at each cashier station of the Store conforming to the specifications set forth in Schedule 3.23 pursuant to which authorized BiG charge and meal plan debit card holders may pay for purchases from the Store. The University will pay over to the Operator monthly the amount of net charge or debit

---

[4]According to Gale Swanka, defendant's senior associate director for operations of the student union,

sales from the preceding month within twenty days after the end of such preceding month, less an administrative fee of 2%..." (Plaintiff's Exhibit B.)

{¶ 14} Although the contract does not prohibit defendant from altering the terms of the meal plan funds, the court concludes that defendant acted in bad faith by prohibiting Wendy's® from accepting any meal plan funds. Indeed, the operating agreement expressly required plaintiff to install card readers in order to accept meal plan debit purchases. It is not disputed that plaintiff is the only eatery in the student union at which meal plan funds are not accepted and that defendant owns and operates all other food options in the student union.

{¶ 15} Plaintiff bargained with defendant for the opportunity to compete with other vendors in the student union. As a part of the bargain, the parties agreed upon both a two percent administrative fee for meal plan debit sales and upon an appropriate rent for occupying a space in the student union. Such an agreement contemplates access by plaintiff to meal plan funds. By unilaterally prohibiting plaintiff from accessing meal plan funds, defendant injured plaintiff's right to receive the fruits of the contract. Although plaintiff could have contemplated reasonable restrictions on meal plan usage, a blanket prohibition could not have been reasonably foreseen. As a result of defendant's bad faith conduct, plaintiff's sales declined permanently and precipitously. Although plaintiff is still able to accept other forms of payment, prohibiting plaintiff from accessing meal plan funds substantially impairs plaintiff's ability to receive the benefit of the bargain. Accordingly, plaintiff has proved that defendant breached the implied covenant of good faith.

**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS**

{¶ 16} "The elements of tortious interference with a business relationship are: (1) a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Diamond Wine & Spirits v. Dayton Heidelberg Distrib. Co., Inc.*, 148 Ohio App.3d 596, 2002-Ohio-3932, 604 (3rd Dist.) citing *Geo-Pro Serv., Inc. v. Solar Testing Laboratories, Inc.*, 145 Ohio App.3d 514, 525 (10th Dist.2001).

---

Wendy's® rent, which is based upon sales, dropped to approximately $70,000 a year in 2010 and 2011.

{¶ 17} "It is well established that 'though a breach of a duty under a contract or lease necessarily interferes with the injured party's business relations with third parties, the injured party is limited to an action for breach of contract and may not recover in tort for business interference.' * * * An exception exists, and a tort action may lie, only where the breaching party indicates, by his breach, a motive to interfere with the adverse party's business relations rather than an interference with business resulting as a mere consequence of such breach." *Digital & Analog Design Corp. v. North Supply Co.*, 44 Ohio St.3d 36, 46-47 (1989); quoting *Cherberg v. Peoples National Bank of Washington*, 88 Wash.2d 595, 604 (1977). (Additional internal citations omitted.)

{¶ 18} The evidence establishes that defendant knew that students were using meal plan dollars at Wendy's® and that defendant intentionally terminated such a relationship. Williams testified that as a result of the decision, Wendy's® turned away students who wished to use their meal plan money and that Wendy's® suffered a significant financial impact.

{¶ 19} The court is convinced that defendant intended to inflict damages beyond that of a typical breach. Indeed, defendant contracted with Chartwells to manage the dining services operations beginning in 2009, and Chartwells will occupy the space vacated by Wendy's® upon expiration of the lease agreement. Furthermore, both Williams and Swanka testified that Chartwells has franchise relationships with various vendors. Moreover, Williams testified that after the meal plan changes in 2009, she contacted defendant about the possibility of defendant operating Wendy's® upon expiration of the lease agreement; however, she did not receive a response. Accordingly, plaintiff has proven its claim for tortious interference with business relationships.

{¶ 20} Finally, to the extent that defendant argues that plaintiff's claims are barred by the statute of limitations, the evidence establishes that plaintiff's cause of action accrued on July 1, 2009, when defendant prohibited plaintiff from access to all student meal plan money. *Bell v. Ohio State Bd. of Trs.*, 10th Dist. No. 06AP-1174, 2007-Ohio-2790, ¶ 27. Plaintiff filed its complaint on March 4, 2010, well within the two-year statute of limitations. R.C. 2743.16(A).



# Court of Claims of Ohio

PERTORIA, INC.

     Plaintiff

     v.

BOWLING GREEN STATE UNIVERSITY

     Defendant

Case No. 2010-03967

Judge Alan C. Travis

<u>JUDGMENT ENTRY</u>

{¶ 21} This case was tried to the court on the issue of liability. The court has considered the evidence, and for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of plaintiff on its claims for breach of contract and tortious interference with business relationships. A case management conference is set for *August 1, 2012, at 10:30 a.m.,* to discuss further proceedings. The court shall initiate the conference via telephone.


                    _____
                    ALAN C. TRAVIS
                    Judge

cc:

Benjamin Z. Heywood           Randall W. Knutti
Erik G. Chappell               Assistant Attorney General
5470 Main Street, Suite 300    150 East Gay Street, 18th Floor
Sylvania, Ohio 43560          Columbus, Ohio 43215-3130

William T. Maloney
20 North Saint Clair Street
Toledo, Ohio 43604

003
Filed July 5, 2012
To S.C. Reporter January 16, 2013