OPINION
{¶ 1} Plaintiff-appellant, Wayne Meadows ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Freedom Banc, Inc. ("Freedom Banc"), Xena Investments, Inc. ("Xena"), William Bourjaily ("Bourjaily"), Larry Druggan ("Druggan"), Carol Druggan[1] and Christopher McCracken ("McCracken.") For the following reasons, we affirm.
 {¶ 2} The facts pertinent to this appeal are as follows. In 1995, appellant incorporated Freedom Banc.[2] Freedom Banc was inactive until 1999, when appellant joined with VandeWater, Druggan and McCracken to revitalize and operate Freedom Banc as a mortgage brokerage. According to appellant, each party was to receive stock representing a 23 percent ownership interest in Freedom Banc, with the exception of VandeWater who would receive a 31 percent interest. (Appellant Dep. at 26.) Appellant alleges he was given proxies authorizing him to vote Druggan's, VandeWater's and McCracken's stock.
 {¶ 3} Appellant served as President, CEO and Chairman of the Board of Freedom Banc until January 11, 2000, when McCracken, VandeWater and Druggan asked him to step down because of a lack of productivity in the daily operations of Freedom Banc. That same day, appellant voluntarily left and quit working for Freedom Banc. Id. at 20.
 {¶ 4} On February 8, 2000, appellant met with VandeWater and Freedom Banc's attorney, Richard Palmer, to resolve issues surrounding his interest in Freedom Banc. During that meeting, a handwritten document entitled "Memorandum of Agreement" was purportedly signed by VandeWater as a representative of Freedom Banc and by appellant in his individual capacity. Appellant claims the agreement provided that Freedom Banc would purchase appellant's 23 percent interest in the company for $20,000. Id. at 68. This transaction never took place.
 {¶ 5} On or about July 2000, Xena, a venture capital company, began discussions with Freedom Banc regarding a possible equity investment in the company. Bourjaily, Xena's principal, was the primary representative in the negotiations with Freedom Banc. Xena ultimately decided to make a loan of $250,000 to Freedom Banc. In consideration of the loan to Freedom Banc, Bourjaily was made an officer of Freedom Banc for a limited period of time.[3] (Bourjaily Affidavit ¶ 9.)
 {¶ 6} Appellant admitted he never saw Freedom Banc turn any kind of profit. Id. at 59. Freedom Banc is currently over $600,000 in debt and is no longer in operation.
 {¶ 7} On August 9, 2000, appellant filed a complaint against appellees, seeking the value of his interest in Freedom Banc. In his complaint, appellant alleged causes of action against appellees for breach of contract, fraud, securities fraud, conspiracy to defraud, and interference with contract. Appellant claimed that VandeWater, McCracken, Druggan and Carol Druggan conspired to deprive appellant of his interest in Freedom Banc. Further, appellant alleged Druggan, VandeWater and McCracken held corporate meetings and took corporate actions in 2000 without appellant's attendance or proxy. Finally, appellant alleged that Bourjaily and Xena joined with VandeWater, Druggan and McCracken to continue the alleged conspiracy to take ownership and control of Freedom Banc from appellant.
 {¶ 8} After granting appellees' motion for a more definite statement, on February 28, 2001, appellant filed his first amended complaint against appellees, alleging the identical causes of action stated in his original complaint. On March 16, 2001, appellees answered the first amended complaint and filed counterclaims against appellant for breach of fiduciary duty, tortious interference with prospective business relations, conversion and unjust enrichment.
 {¶ 9} On January 16, 2002, appellees filed their motion for summary judgment seeking judgment in their favor on appellant's claims. In their motion, appellees contended this lawsuit was based solely upon appellant's unsupported assumption that appellees defrauded him of his stock in Freedom Banc. Further, appellees claimed that Xena and Bourjaily, as creditors of Freedom Banc, cannot be liable under any legal theory for the alleged actions taken by Freedom Banc and its management. Appellees asserted there was no evidence that Bourjaily and Xena owned or controlled Freedom Banc, and that this conclusion may not be reasonably inferred from the evidence. Finally, appellees argued that the memorandum of agreement was not a legally binding contract, and that if it was, appellant could not enforce it because he himself had breached the agreement. Appellees filed a supplemental memorandum in support of their motion for summary judgment, and attached thereto copies of the loan documents related to Xena's loan to Freedom Banc.
 {¶ 10} In response, appellant asserted that genuine issues of material fact existed for trial as to all allegations in his complaint. In support of his position, appellant attached to his memorandum contra the following documents: (1) Freedom Banc's application for a line of credit at Huntington National Bank, signed by Robert Sperli ("Sperli"), a corporate officer of Xena; (2) document entitled "Majority Action Taken by Directors Without A Meeting of Freedom Banc, Inc." dated August 8, 2000; (3) document entitled "Majority Action Taken by Directors Without A Meeting of Freedom Banc, Inc." dated July 17, 2000; (4) affidavit of Clay Thrash ("Thrash"), a friend of appellant who had previously loaned Freedom Banc money with attached exhibits; (5) McCracken's trust agreement dated January 27, 1999; (6) cognovit demand note signed by VandeWater, Druggan and McCracken dated March 27, 2001; (7) Freedom Banc's assets and liabilities report dated April 19, 2000 signed by VandeWater; (8) copy of the memorandum agreement; (9) letter to Victor Krupman from Richard Palmer, appellees' previous attorney, dated March 23, 2000; (10) copy of a headline from the New York Times; (11) document dated March 12, 1999 signed by VandeWater; (12) letter to appellant advising him of his removal from his employment pending the shareholder's meeting; (13) three Proxies granting appellant the power to vote McCracken's, Druggan's and VandeWater's stock in Freedom Banc; (14) January 11, 2000 minutes from meeting attended by McCracken, appellant, VandeWater and Druggan; and (15) affidavit of appellant.
 {¶ 11} Appellees filed a reply memorandum on March 18, 2002. In support, appellees attached an additional affidavit of Bourjaily with attached exhibits. On March 22, 2002, appellant filed a surreply in response to appellees' reply memorandum, and attached thereto excerpts from VandeWater and Bourjaily's deposition testimony.
 {¶ 12} On April 30, 2002, the trial court issued a decision granting appellees' motion for summary judgment on all of appellant's claims. In its decision, the court found appellant's arguments in his memorandum contra largely consisted of factual generalization and speculation, with no legal authority to support his arguments. Further, the court found that the documents attached to appellant's memorandum contra, with the exception of exhibits attached to Thrash's affidavit, were unverified and therefore inadmissible under Civ.R. 56.[4] The court concluded that appellant "present[ed] no admissible evidence that Xena's loan was actually an equity investment, that the stock for which [appellant] is allegedly owed is not worthless, that the proxies could not be revoked, or that defendants improperly divested him of his stock." (April 30, 2002 Decision at 6.)
 {¶ 13} The court found that Thrash's affidavit failed to create a genuine issue of material fact because it contained inadmissible hearsay and that, even if the hearsay were admissible, the statements did not create a triable issue as to whether Xena owned or controlled Freedom Banc or whether the other defendants had wrongfully deprived appellant of his ownership interest.
 {¶ 14} The court also found that statements contained in appellant's affidavit were inadmissible hearsay, and also found many of the statements to be mere conclusions, not factual statements. Finally, to the extent that appellant's affidavit did contain factual statements, the court found these statements did not create genuine issues of fact that would preclude summary judgment. The court journalized a judgment entry on June 25, 2002, entering judgment for appellees.[5] The court granted appellant's motion to dismiss appellees' counterclaims on October 20, 2003.
 {¶ 15} On appeal, appellant asserts the following assignments of error:[6]
FIRST: The Court Erred When It Granted Judgment To Defendants As A Matter Of Law.
SECOND: The Court erred when it ruled on page six that the documents attached to Plaintiff's Memorandum contra Defendants' Motion for Summary Judgment were not to be considered as they were unverified and therefore not admissible evidence under Civil Rule 56. (The exhibits attached to Clay Thrash's Affidavit were acceptable.)
The documents attached to the Memorandum are found on document entitled Index of Exhibits which was attached to Plaintiff's Memorandum Contra and which is included here as Exhibit 18.
THIRD: The Court erred when it found Plaintiff's arguments regarding his claim largely consisted of factual generalizations and speculations.
a. The Court erred when it found no admissible evidence was presented by the Plaintiff that Xena's loan was actually an equity investment.
b) The Court erred when it found that the Plaintiff did not present admissible evidence that the stock for which he was allegedly owed is not worthless.
c) The Court erred when it found that the Plaintiff did not present admissible evidence that the proxies he held could not be revoked.
d) The Court erred when it found that the Plaintiff did not present admissible evidence that the Defendants improperly divested Plaintiff of his stock.
FOURTH: The Court erred when it found that Thrash's Affidavit did not support Plaintiff's arguments.
a) The Court erred when it found Thrash's statement as to what "Bill Bourjaily" said is hearsay.
b) The Court erred when it found "Bourjaily's alleged statements that `Freedom would pay dearly,' that `he knew Freedom Banc owes Wayne something,' and that `they were buying Freedom Banc' would not demonstrate that Xena had ownership or control of Freedom Banc or that Defendants wrongfully deprived Plaintiff of his 23 percent ownership or refused to compensate him for his stock."
FIFTH: The Court erred when it found that Meadows' Affidavit does not support his argument.
a) The Court erred when it ruled that Meadows' statement as to the content of Tim VandeWater's deposition testimony is hearsay.
b) The Court erred when it ruled that testimony that VandeWater owned Freedom Banc stock and acted as a shareholder, was working on a loan that could have made millions of dollars, and that Xena's attorneys drafted loan documents is insufficient to demonstrate that Xena controlled or owned Freedom Banc or that his (Meadows') alleged stock share is not worthless.
c) The Court erred when it ruled Meadows' statement that "Wayne Meadows says Freedom, as a mortgage broker, could make huge profits" is improper because this statement is conclusory.
d) The Court erred when it ruled he (Meadows) does not provide a factual basis for the statement that Freedom could make huge profits.
e) The Court erred when it ruled that Meadows had not demonstrated that he was qualified to give expert testimony as to a business profitability.
f) The Court erred when it found that Meadows' statement that "Defendants discussed the Memorandum of Agreement among Meadows, Freedom, and Chris, Tim and Larry with Mr. Ross" does not indicate whether the documents was (were) intended to be a final agreement.
g) The Court erred when it found that Meadows' statement that "Defendants discussed the Memorandum of Agreement among Meadows, Freedom, and Chris, Tim and Larry with Mr. Ross" if a final agreement whether Plaintiff has a legal right to enforce its terms.
h) The Court erred when it found Meadows' statement that Tim VandeWater, Larry Druggan, and Christopher McCracken gave him proxies over their stock says nothing about Plaintiff's alleged stock ownership; and the Court erred when it found that their revocation (Larry, Tim and Chris's) of proxies was not shown improper by Medows' statements.
i) The Court was in error when it found Meadows does not indicate that he has personal knowledge of the facts (he) asserted.
SIXTH: The Court was in error when it sustained Defendants' Motion for Summary Judgment.
 {¶ 16} Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, when the evidence is construed in a light most favorable to the nonmoving party. Civ.R. 56(C); State ex rel. Grady v.State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 677 N.E.2d 343.
 {¶ 17} We review the trial court's grant of summary judgment de novo.Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 654 N.E.2d 1327. We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. SeeDresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264;Coventry, supra, at 41-42.
 {¶ 18} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on the essential element(s) of the nonmoving party's claims. Dresher, supra, at 292.
The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
Id. at 293.
 {¶ 19} For ease of discussion, we will address appellant's assignments of error out of order. In his second assignment of error, appellant contends that the trial court erred by ruling the documents attached to his memorandum contra were unverified and therefore inadmissible under Civ.R. 56.
 {¶ 20} In ruling on a motion for summary judgment, the trial court properly may consider "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action * * *." Civ.R. 56(C). No other evidence or stipulation may be considered. Id. The parties' briefs and memoranda of law are not considered evidence under Civ.R. 56(C). Hickman v. Ford MotorCo. (1977), 52 Ohio App.2d 327, 330, 370 N.E.2d 494.
 {¶ 21} Here, the documents attached to appellant's memorandum contra, with the exception of Thrash's and appellant's affidavits, do not fall under any of the types of evidence listed in Civ.R. 56(C). "The proper procedure for introducing evidentiary matter not specifically authorized by Civ. R. 56(C) is to incorporate it by reference in a properly framed affidavit pursuant to Civ. R. 56(E)." Biskupich v. Westbay Manor NursingHome, 33 Ohio App.3d 220, 222, 515 N.E.2d 632. Civ.R. 56(E) states in part that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Civ.R. 56(E) requires that affidavits be made upon the personal knowledge of the affiant and set forth facts that would be admissible in evidence. Affidavits filed in support of or in opposition to summary judgment must be made on personal knowledge. State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.
(1994), 69 Ohio St.3d 217, 223, 631 N.E.2d 150. "Personal knowledge" is defined as "knowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay." Brannon v. Rinzler (1991), 77 Ohio App.3d 749, 756,603 N.E.2d 1049. An affidavit without an averment of personal knowledge must demonstrate personal knowledge specifically. Equitable LifeAssurance Society of U.S. v. Kuss Corp. (1984), 17 Ohio App.3d 136,138, 17 OBR 235, 477 N.E.2d 1193.
 {¶ 22} In the present case, with the exception of appellant's and Thrash's affidavits, appellant did not support any of the documents with an affidavit based on personal knowledge, setting forth such facts as would be admissible in evidence. Thus, these documents do not comply with the evidentiary requirements of Civ.R. 56(E). Moreover, while a court in its discretion may consider documentary evidence not otherwise permitted under Civ.R. 56(C) if the opposing party has not objected to its use, there is no requirement that a court do so. Brown v. Ohio Cas. Ins. Co.
(1978), 63 Ohio App.2d 87, 90-91, 409 N.E.2d 253, paragraph two of the syllabus; Biskupich at 222. Accordingly, we find the trial court did not err in not considering this unverified evidence and finding these documents inadmissible.
 {¶ 23} Appellant also asserts that Sperli's line of credit application to Huntington National Bank was verified by an affidavit from a Huntington National Bank employee that the documents are true and accurate copies of paperwork kept at Huntington National Bank. Appellant submitted with his brief on appeal an affidavit from a Huntington National Bank employee verifying the authenticity of the line of credit application, but the record reveals that he did not submit this affidavit to the trial court. The scope of our review on appeal is confined to matters within the record transmitted from the trial court. App.R. 12(A); App.R. 9; Lamar v. Marbury (1982), 69 Ohio St.2d 274,431 N.E.2d 1028. This court, accordingly, can take no notice of facts or circumstances brought to our attention by means of affidavits or other evidence not appearing in the record and before the trial court at the time it rendered its judgment. Thus, we find the trial court did not err in finding the line of credit application was inadmissible evidence.
 {¶ 24} Further, appellant concedes that the unverified copy of a headline from the New York Times was "unimportant" and "not meant as evidence." (Appellant's Brief at 8.) As this evidence does not comply with the requirements of Civ.R. 56, we find the trial court did not err in finding the same inadmissible.
 {¶ 25} In consideration of the foregoing, appellant's second assignment of error is overruled.
 {¶ 26} In appellant's fourth assignment of error, he argues that the court erred by finding Thrash's affidavit contained inadmissible hearsay and was insufficient to counter appellees' motion for summary judgment. Thrash's affidavit reads in pertinent part:
17. When Bill and I negotiated at Polaris Grille, I asked him why he and his company were putting money into Freedom Banc. I was curious. I thought and said Freedom Banc was a failing company and that Xena and Bill would lose their investment.
18. Bill told me not to worry; that "Freedom would pay dearly" for Xena's investment; for its involvement and money.
19. Bill said they would take care of me and my debt and they would take care of Wayne as well-next. He knew of Wayne and he knew Freedom Bank owed Wayne something and that Wayne was involved with Freedom.
20. Bill said they (referring to himself and Xena and the other man) were buying Freedom Banc.
 {¶ 27} First, appellant asserts Thrash's statements in his affidavit as to what Bourjaily said to him are not hearsay. He argues that these statements in Thrash's affidavit are admissible under Evid.R. 801(D)(2) as statements of a party-opponent. Further, appellant alleges that Bourjaily's statements to Thrash, in light of Sperli's representations in his application for a line of credit with Huntington National Bank on behalf of Freedom Banc and appellees' failure to identify the shareholders of Freedom Banc demonstrate that genuine issues of material fact exist regarding whether Xena owned or controlled Freedom Banc.
 {¶ 28} Because it is clear that the trial court considered these statements for their substance, we review the trial court's finding that these statements fail to demonstrate that Xena had ownership or control of Freedom Banc, appellees wrongfully deprived appellant of his 23 percent ownership in Freedom Banc, or that appellees refused to compensate him for his stock. We agree with the trial court's finding. Standing alone, these statements do not conclusively create a genuine issue of material fact as to all elements of any of appellant's claims. Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 29} In appellant's fifth assignment of error, he contends that the trial court erred when it ruled that his affidavit does not support his memorandum contra to appellees' motion for summary judgment. Appellant's affidavit states in pertinent part:
1. Tim signed a proxy giving voting power over his stock in FreedomBanc, Inc. to Wayne Meadows. Such proxy was delivered to Attorney Laura Peterson, who has always had possession of the original proxy.
2. Larry Druggan controlled stock in FreedomBanc, Inc. (23%), which stock he gave to his wife, Carole [sic]. Carole [sic] Druggan gave Wayne Meadows a proxy giving him voting control over her FreedomBanc, Inc. stock.
3. Christopher McCracken had control over FreedomBanc, Inc. stock (23%), which he transferred to a Trustee named Mary Lisa Atteberry, who gave Wayne Meadows a proxy giving him voting rights over this stock she held as Trustee.
4. Tim VandeWater testified in his deposition that they had been working on a loan to Bob Frank in Youngstown, Ohio and FreedomBanc, Inc. could have made millions of dollars over the life of the loan. Wayne Meadows says Freedom, as a mortgage broker, could make huge profits.
5. Defendants discussed the Memorandum of Agreement among Meadows, Freedom, and Chris, Tim and Larry with Mr. Ross[, an employee of Freedom Banc.]
6. In his deposition, the Defendant Tim admitted Xena's attorneys drafted the loan documents between Xena and Freedom and those between Freedom and Tim. Freedom was not represented, nor was Tim.
 {¶ 30} First, appellant argues that his statements in his affidavit regarding the content of VandeWater's deposition testimony were not hearsay and admissible under Evid.R. 801(D)(2) as statements of a party-opponent. Appellant contends these statements were provided to show that when his interest in Freedom Banc was taken from him, it had value. Further, appellant contends the trial court erred when it ruled appellant's statement that "Freedom Banc, as a mortgage broker, could make huge profits" was unsupported and conclusory. Appellant also alleges that the trial court erred when it ruled that appellant had not demonstrated that he was qualified to give testimony as to a business' profitability. Thus, appellant concludes that issues of fact remain as to whether or not he was denied compensation for his stock in Freedom Banc.
 {¶ 31} Upon review, we find that appellant's account of VandeWater's testimony does not demonstrate that appellant's alleged stock share is not worthless. With regard to appellant's opinion regarding Freedom Banc's profitability, even if appellant had provided sufficient evidence to demonstrate he is qualified to opine regarding Freedom Banc's profitability, which he did not, his statement was not specific enough to create a genuine issue of material fact. Thus, we agree with the trial court's finding that his statement regarding Freedom Banc's profitability is unsupported and conclusory.
 {¶ 32} Appellant also claims the court erred when it found that appellant's statement that "defendants discussed the memorandum of agreement among Meadows, Freedom, and Chris, Tim and Larry with Mr. Ross" does not indicate whether the memorandum of agreement was intended to be final and, if it was, whether or not appellant had a legal right to enforce its terms. Appellant argues that the negotiations were not presented as proof of an agreement, but to show that the parties admitted appellant had stock to sell and that the parties set a value of his stock at the time of negotiations. But evidence that the parties admitted appellant had stock and that the parties assigned a value of his stock does not present a genuine issue of material fact for trial on all elements of any of appellant's claims.
 {¶ 33} Finally, appellant asserts that the trial court erred when it found that his statement that VandeWater, McCracken and Druggan gave him proxies authorizing him to vote their stock "says nothing about [his] alleged stock ownership or that their revocation of [his] alleged stock-ownership was improper." (April 30, 2002 Decision at 8.) Appellant asserts that these statements demonstrate that he had control or was intended to have control over Freedom Banc. Further, appellant contends the impropriety of the revocation of the proxies was shown in the proxies themselves, which appellant alleges were for a period of ten years.
 {¶ 34} As previously stated, appellant did not submit the proxies or the document regarding the revocation of these proxies in support of his memorandum contra in accordance with the requirements of Civ.R. 56. Further, appellant's ownership or control of Freedom Banc standing alone does not create a genuine issue of material fact that appellees improperly denied him of his interest in Freedom Banc, or that the revocation of the proxies authorizing him to vote Druggan's, VandeWater's and McCracken's stock was improper.
 {¶ 35} Accordingly, appellant's fifth assignment of error is overruled.
 {¶ 36} Construing the evidence most strongly in appellant's favor, we find appellees discharged their initial burden of informing the trial court of the basis of their motion for summary judgment, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of appellant's claim. Dresher, supra, at 292. In their motion for summary judgment, appellees contended this lawsuit was based solely upon appellant's unsupported assumption that appellees defrauded him of his stock in Freedom Banc. Further, appellees claimed that Xena and Bourjaily, as creditors of Freedom Banc, could not be liable under any legal theory for the alleged actions taken by Freedom Banc and its management. In support of their motion, appellees submitted the following evidence: (1) appellant's deposition with attached exhibits; (2) affidavit of Larry A. Druggan; (3) affidavit of Bourjaily; and (4) document entitled "Notification of Filing Under Bankruptcy Code and Suggestion of Stay" filed by Lee C. Mittman, attorney for VandeWater, on December 12, 2001.
 {¶ 37} Based on the foregoing, we find that appellant has not satisfied his reciprocal burden as the nonmoving party to identify evidence to demonstrate that any genuine issue of material fact must be preserved for trial for his claims. Civ.R. 56(E). The record is devoid of any evidence to support appellant's claims that appellees wrongfully deprived appellant of his interest in Freedom Banc, the stock which he is allegedly owed is not worthless, or that Xena's loan was actually an equity investment. Therefore, we find that appellant's claims fail as a matter of law, and appellant's first, third and sixth assignments of error are overruled.
 {¶ 38} Accordingly, appellant's first, second, third, fourth, fifth and sixth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Brown, P.J., and Lazarus, J., concur.
[1] Druggan and Carol Druggan were dismissed from this appeal with prejudice on February 3, 2004.
[2] At the time of its incorporation, Freedom Banc's original name was Freedom Network, Inc.
[3] Bourjaily's affidavit does not specify a time frame for which he served as an officer of Freedom Banc.
[4] With the exception of Thrash and Meadows' affidavits, the court did not individually address the admissibility of the evidence attached to appellant's memorandum contra.
[5] Appellant appealed the court's June 25, 2002 entry, which we dismissed because the judgment was not a final appealable order. SeeMeadows v. Freedom Banc, Inc. Franklin App. No. 02AP-791.
[6] Appellees did not submit a brief in the instant matter.