OPINION
{¶ 1} Plaintiff-appellant, Norman V. Whiteside, appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, John Conroy and Charles G. Kaps.
 {¶ 2} In 1985 and 1986, appellees defended appellant in the Franklin County Court of Common Pleas after the Franklin County Prosecutor's Office charged appellant with two counts of conspiracy to commit aggravated murder in violation of R.C. 2923.01. The prosecution charged appellant with conspiracy for his role in joining co-defendants, Gordon and Paul Newlin, in a plan to murder Larry Canady and Melvin Thomas. In attempting to carry out the murders on April 17, 1982, a co-defendant shot Laura Carter, an innocent bystander. A jury convicted appellant of the charges and the trial court sentenced appellant to prison. Appellant is still serving his prison sentence.
 {¶ 3} Three years before the conspiracy trial, Kaps represented appellant in federal court for illegal procurement of firearms. The federal charge stemmed from the same facts and circumstances as the state conspiracy case. The federal court acquitted appellant.
 {¶ 4} Appellant appealed his conspiracy convictions and sentence. This court upheld appellant's convictions, but remanded the case for resentencing. State v. Whiteside (Feb. 10, 1987), Franklin App. No. 86AP-325. Additionally, appellant filed a motion for post-conviction relief, claiming, in part, that double jeopardy and collateral estoppel barred the state court from trying appellant on the conspiracy charge due to his acquittal on the federal charge. The trial court denied the post-conviction petition, and we affirmed. State v. Whiteside (Sept. 29, 2000), Franklin App. No. 00AP-223 ("Whiteside").
 {¶ 5} On June 15, 2004, appellant filed a verified complaint against appellees for legal malpractice pertaining to their representation on the conspiracy case. In his complaint, appellant alleged that appellees failed to challenge the prosecution's use of "transferred intent" during trial. In raising this claim, appellant indicated that Franklin County Assistant Prosecutor Patrick Sheeran "told [appellees] that the state was proceeding with the conspiracy to commit aggravated murder charge * * * under the `doctrine of transferred intent.'" Appellant claimed that the prosecution also submitted a jury instruction on "transferred intent" to go with its theory of the case. The jury instruction stated:
[Appellant] is charged with conspiracy to commit aggravated murder. If you find that [appellant] and his named or unnamed co-conspirators with prior calculation and design did have a purpose to cause the death of a particular person and that a shot accidentally caused the death of Laura Carter, then [appellant] would still be guilty of conspiracy to commit aggravated murder.
The purpose required is to cause the death of another, not any specific person. If the shot missed the person intended, but caused the death of another person altogether, the element of purpose has been met.
However, if there was no purpose on the part of defendant to cause the death of anyone, the defendant cannot be found guilty of conspiracy to commit aggravated murder.
Appellant argued that appellees committed legal malpractice by not presenting "adversarial testing" against the "transferred intent" doctrine.
 {¶ 6} Appellant also alleged in the complaint that appellees committed legal malpractice by not raising to the trial court "double jeopardy and/or collateral estoppel once it was determined that the conduct for which [appellant] had been acquitted in the [federal case] would come [into] play" during the conspiracy case in state court.
 {¶ 7} Next, appellant asserted in the complaint that appellees committed legal malpractice by not obtaining "tape recordings made by the State's key witness[.]"
 {¶ 8} In addition, appellant maintained in the complaint that appellees committed legal malpractice by not testing for tampering a recorded interview between appellant and Columbus Police Detective Robert Young. Although the federal court excluded the recording from evidence during the federal trial, the state trial court allowed the prosecution to use the recording during the conspiracy trial. In raising the above legal malpractice claim, appellant contended that "[t]his tape recording in audio-cassette form was 45 minutes in length when it was presented in the [federal case]. However, when it was presented in the [state case], the tape-recording became 34 minutes in length." Appellant stated that "exculpatory content and [a] promise not to prosecute was removed from the original tape[.]"
 {¶ 9} On December 1, 2004, appellees moved for summary judgment pursuant to Civ.R. 56(C). Appellees attached to their motion affidavits from Sheeran, Conroy, and Kaps. Kaps attached to his affidavit selected transcript pages from the conspiracy case and the above noted jury instruction that the prosecution submitted.
 {¶ 10} In his affidavit, Kaps countered appellant's claim that appellees committed legal malpractice by not challenging the prosecution's use of the "transferred intent" doctrine. Kaps stated in the affidavit that "[n]o legal distinction existed between [appellant's] purpose in conspiring to accomplish the death of Canady and Thomas and the resulting death of Laura Carter[.]"
 {¶ 11} Moreover, Kaps countered appellant's double jeopardy and collateral estoppel contention, noting that "[n]o basis existed for challenging the * * * prosecution for conspiracy to commit murder, based on [appellant's] earlier acquittal for illegal purchase of firearms in Federal Court, inasmuch as those cases involve different criminal charges and different jurisdictions."
 {¶ 12} Lastly, Kaps addressed appellant's allegation that appellees committed legal malpractice by not testing for tampering the recorded interview between Detective Young and appellant. Kaps stated, "[i]n my professional judgment, testing Detective Robert Young's tape recording for alterations * * * would have been pointless, because the tape obviously did not cover the entire conversation." In support of this conclusion, Kaps noted that he "personally listened to the tape and confirmed it was a micro cassette, which was completely filled on one side with approximately 34 minutes of [appellant's] police interview and totally blank on the other side."
 {¶ 13} In further addressing the above allegation, Kaps indicated in his affidavit that, during a hearing on the conspiracy case:
* * * Young testified that he turned on the tape recorder * * * and put it in his pocket just before walking into the interview room. The tape ran out before the interview concluded, which lasted about 2 hours. Young did not leave the room to flip the tape, because he did not want to make [appellant], who did not know he was being taped, suspicious.
Kaps attached to the affidavit portions of the conspiracy case transcript confirming such testimony from Detective Young.
 {¶ 14} Kaps further acknowledged that, while appellant testified during the conspiracy case, "the police promised not to prosecute him," appellant's "testimony clearly established that if any such promises were made, then they would have had to have taken place during a five to eight minute `pre-meeting' after which Young left the room for about a minute and a half, before coming back to conduct the two hour interview." Kaps also attached to his affidavit portions of the conspiracy case transcript whereby appellant testified that, during a "pre-meeting" "[b]efore the start of this tape[,]" law enforcement made promises not to prosecute.
 {¶ 15} Lastly, Kaps mentioned in his affidavit that appellant "has no basis for asserting that the tape was originally longer than 34 minutes in length." Realizing that appellant was basing his argument, in part, on Sheeran's statement during the conspiracy case that the recording was 45 minutes in length, Kaps asserted that Detective Young corrected Sheeran's misstatement during the detective's testimony in the conspiracy case. In support, Kaps attached to his affidavit portions of the conspiracy case transcript whereby Detective Young indicated that the tape was only approximately 30 minutes in length.
 {¶ 16} Sheeran provided the following in his affidavit attached to appellees' summary judgment motion:
Prior to [appellant's] trial [in the conspiracy case], there was court hearing on a motion filed by [appellees] to suppress statements that [appellant] had made during a police interview. At the hearing, I informed the Court of the [prosecution's] intention to introduce into evidence a cassette tape made by Detective Robert Young upon which he had recorded some of [appellant's] statements. Detective Young testified that the tape was approximately 30 minutes in length. Shortly before that, I had stated that I believed the length to be about 45 minutes. I misspoke. * * *
 {¶ 17} Sheeran also mentioned:
* * * [T]o the extent that [appellant] is claiming that some segment of the tape was erased or altered, he is in error. No one in the Prosecuting Attorney's office erased or altered the tape, nor do I have any reason to believe that anyone in the Columbus Police Department did so. * * *
 {¶ 18} Lastly, Sheeran noted:
* * * Under oath, Detective Young explained why the tape was 30 minutes in length: he testified that just before going into a room to interview [appellant], he turned on his mini cassette and hid it in his pocket. The tape ran out approximately 30 minutes later, and because Detective Young felt that [appellant] would become suspicious if Young tried to leave the room (to turn the tape over to its other side), Detective Young chose not to leave the room, and, as a result, not all of the conversation was recorded. * * *
 {¶ 19} Subsequently, on December 29, 2004, appellant filed a "notice of discovery service." In the notice, appellant stated that "[appellant] for the second time is serving discovery requests upon [appellees]. [Appellees'] counsel claims not to have received the first requests sent on September 14, 2004."
 {¶ 20} On January 7, 2005, appellant filed a Civ.R. 56(F) motion to continue summary judgment proceedings. Appellant claimed that he needed more time to conduct discovery before countering appellees' summary judgment motion.
 {¶ 21} Appellant attached to his Civ.R. 56(F) motion an affidavit where he stated, "I need time to obtain an attorney to evaluate my case against [appellees] and provide me with an affidavit supporting my malpractice claims against them." Appellant also discussed in the affidavit his allegations from his complaint.
 {¶ 22} In particular, appellant addressed his claim concerning the recorded interview between appellant and Detective Young. In his affidavit, appellant stated that, toward the beginning of the federal case, the prosecutor "showed [appellees] and [appellant] a 90-minute cassette tape (45 minutes on each side) stating he intended to use the tape as evidence."
 {¶ 23} Appellant further indicated in his affidavit that Detective Young testified during the federal case that, "`[f]or the first 45 minutes of that interview, [appellant] did quite a bit of talking.'" Thus, appellant surmised that "[h]ad the tape originally been 34 minutes, [Detective] Young would have testified that `For the first 34 minutes of that interview, [appellant] did quite a bit of talking.'" According to appellant, "[Detective] Young had no other reason to testify about the 45 minutes except for unwittingly announcing the length of one side of the tape." Appellant attached to his Civ.R. 56(F) motion a copy of the transcript from the federal case containing the above testimony from Detective Young.
 {¶ 24} In addition, appellant attached an affidavit from Regina Holland. In her affidavit, Holland claimed that she went to the Franklin County Prosecutor's Office on March 8, 2002, to obtain a copy of the recorded interview between Detective Young and appellant. Holland stated that she wanted the copy because "different court records revealed different tape times/lengths. For example, when the tape was presented in a federal court in 1982, the tape was 45 minutes in length; however, when it was used during the state trial, the length strangely became 34 minutes." Moreover, Holland mentioned that, while at the prosecutor's office, she heard an employee tell a co-worker that "`they know it's not the original tape and they're trying to get it examined, and that would result in opening up a huge can of worms.'" Employees at the prosecutor's office did not give Holland a copy of the recording.
 {¶ 25} Likewise, appellant submitted an affidavit from Mary Roberts, indicating that Roberts "read the affidavit of Regina B. Holland relating to our visit to the Franklin County Prosecutor's Office on March 8, 2002, and what Ms. Holland avers * * * is also what I recall being said by parties mentioned."
 {¶ 26} Moreover, in addressing the recorded interview issue, appellant attached to his Civ.R. 56(F) motion a letter from a Franklin County Prosecutor's Office employee. In the letter, the employee wrote to a co-worker:
On June 23, 2003, we received a request from [appellant's] family for a tape recording that was used as evidence * * *. They allege that the tape was altered from 45 minutes to 34 minutes. Based upon records reviewed, it appears that the subject tape used as evidence was not the original. Please advise.
 {¶ 27} Next, in his Civ.R. 56(F) motion, appellant provided information on his "transferred intent" issue. Specifically, appellant submitted a copy of a letter that Kaps wrote to appellant on February 22, 1994. In the letter, Kaps stated that:
* * * [T]here is a difference between the Doctrine of Transferred Intent and Conspiracy. The latter theory is what you were charged with in the Laura Carter killing. If the Doctrine of Transferred Intent had applied, you would have had to have been charged with and convicted of murder, not conspiracy. * * * As long as the [prosecution] proved you were aware of and did something to promote the common purpose (i.e. to kill off the Cleveland gang), you are responsible for the crime that was committed (i.e. the unintended killing of Laura Carter) * * *.
 {¶ 28} Additionally, in the 1994 letter, Kaps wrote, "[y]our involvement, at least with respect to the killing of Laura Carter, was slight. Under the eyes of the law, however, you are as guilty of that crime as the man who pulled the trigger."
 {¶ 29} Appellees opposed appellant's Civ.R. 56(F) continuance motion, explaining that, "[i]nasmuch as the Court's final cut off date for discovery is not until April 5, 2005, there is yet ample time for [appellant] to conduct his discovery."
 {¶ 30} On January 27, 2005, the trial court denied appellant's Civ.R. 56(F) continuance motion and granted summary judgment in favor of appellees. In granting summary judgment to appellees, the trial court recognized that appellant did not oppose the summary judgment motion and that appellant "[t]echnically * * * [did] not proffer any affidavits or other Civil Rule 56 evidence rebutting [appellees'] initial burden." Rather, according to the trial court, appellant "proffer[ed] [three] affidavits in support of his Rule 56(F) motion." "Despite this technical error," the trial court considered "such affidavits as [appellant's] rebuttal to [appellees'] initial burden" in the summary judgment motion.
 {¶ 31} In examining appellant's proffered affidavits, the trial court noted that appellant's own affidavit "fail[ed] to satisfy his burden of demonstrating genuine issues of material fact[.]"
 {¶ 32} The trial court also stated that the affidavits from Holland and Roberts conveyed inadmissible hearsay statements. Nonetheless, the trial court concluded that "[e]ven if the Court was allowed to consider the hearsay-laden statements of these two affiants under Ohio Civil Rule 56, the information does not proffer specific facts or testimony that [appellees] failed to perform to community standards in criminal practice."
 {¶ 33} Accordingly, the trial court concluded that appellant failed to "demonstrate that genuine issues of material fact exist as to his claims for professional malpractice" and, therefore, appellees "are entitled to summary judgment as to all of [appellant's] claims."
 {¶ 34} Appellant appeals, raising five assignments of error:
[1.] The trial court abused its discretion when it granted summary judgment before discovery process was complete.
[2.] The trial court erred regarding issue of expert testimony.
[3.] The trial court erred in granting summary judgment without fully addressing the issue of malpractice regarding the application of transferred intent doctrine.
[4.] The trial court erred in granting summary judgment without addressing undisputed facts listed in complaint, and without considering undisputed evidentiary facts.
[5.] A trial court errs when it makes credibility of affidavits an issue in granting summary judgment.
 {¶ 35} In his first assignment of error, appellant contends that the trial court erred by ruling on appellees' summary judgment motion without first granting appellant's Civ.R. 56(F) continuance motion to allow appellant to obtain more time for discovery. We disagree.
 {¶ 36} Under Civ.R. 56(F):
Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had * * *.
 {¶ 37} "The court's discretion in granting continuances pursuant to Civ.R. 56(F) should be exercised liberally in favor of the nonmoving party who has requested a reasonable interval for the production of necessary rebuttal material." Carrier v. Weisheimer Cos., Inc. (Feb. 22, 1996), Franklin App. No. 95APE04-488, citing Whiteleather v. Yosowitz
(1983), 10 Ohio App.3d 272. Ultimately, however, "`[t]he provisions of Civ.R. 56(F) are all discretionary. They are not mandatory.'" Martinezv. Yoho's Fast Food Equip., Franklin App. No. 02AP-79, 2002-Ohio-6756, at ¶ 14, quoting Carlton v. Davisson (1995), 104 Ohio App.3d 636, 648. Accordingly, we cannot reverse a trial court's denial of a party's Civ.R. 56(F) motion absent an abuse of discretion. Martinez at ¶ 14, quoting Davisson at 648. An abuse of discretion constitutes more than an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. Rather, it entails an action that is unreasonable, arbitrary or unconscionable. Id.
 {¶ 38} Here, appellant contends that the trial court should have followed its originally imposed April 5, 2005 discovery cut-off date before ruling on the summary judgment motion. In Doriott v. MVHE, Inc.,
Montgomery App. No. 20040, 2004-Ohio-867, at ¶ 45, the Second District Court of Appeals rejected a plaintiff's claim that she needed a Civ.R. 56(F) continuance to address the defendants' summary judgment motion because she was relying on the trial court's discovery cut-off date. The court reasoned that the plaintiff "was not entitled to rely on the cut-off date with respect to any motions for summary judgment[.]"Doriott at ¶ 45. Likewise, here, pursuant to Doriott, appellant was not entitled to rely on the discovery cut-off date with respect to appellees' summary judgment motion, and the trial court did not abuse its discretion by failing to grant appellant's Civ.R. 56(F) motion to extend summary judgment proceedings beyond the discovery cut-off date. See Doriott at ¶ 45, 52.
 {¶ 39} Additionally, a party's own lack of diligence undermines his or her claim that sufficient reasons exist for a Civ.R. 56(F) continuance. See Doriott at ¶ 47. Here, appellant has asserted that, after he filed his complaint in June 2004, he tried to obtain discovery in September 2004, but was unsuccessful because "[d]efense counsel claims not to have received the" September request. However, appellant delayed following up on his discovery request until after appellees filed the summary judgment motion. Moreover, appellant has had knowledge of the accrual of his claims since 1986, 18 years before he filed the complaint. During those years, appellant had ample opportunity to make public records requests and to conduct pre-litigation discovery under the Rules of Civil Procedure. Such lack of diligence undermines appellant's purported contentions that he had sufficient reasons for a Civ.R. 56(F) continuance. See Doriott at ¶ 47. In so concluding, we note that appellant's incarceration does not excuse his lack of diligence. SeeWombold v. Barna (Dec. 11, 1998), Montgomery App. No. 17035.
 {¶ 40} For these reasons, we find misplaced appellant's reliance onTucker v. Webb Corp. (1983), 4 Ohio St.3d 121, to support his contention that the trial court erred by not granting the Civ.R. 56(F) continuance motion. In Tucker, the Ohio Supreme Court held that a trial court erroneously granted summary judgment in a products liability action because the opposing party did not have sufficient time to discover critical facts surrounding transactions between the product manufacturer and designer. Id. at 122-123. Again, based on the above, we find Tucker
distinguishable given that appellant had sufficient time to begin discovery since his claims accrued in 1986, and given that appellant was not diligent in following up on the unanswered discovery requests that he made after he filed his complaint.
 {¶ 41} Similarly, we reject appellant's claim that he needed the continuance because, until he filed the lawsuit, he was unaware of what defenses appellees would pursue. "`The purpose of the discovery rules * * * is to prevent surprise to either party at the trial or to avoid hampering either party in preparing its claim or defense for trial.'"Alpha Benefits Agency, Inc. v. King Ins. Agency, Inc. (1999),134 Ohio App.3d 673, 683. Likewise, discovery preserves a party's right to prepare his or her case and to investigate favorable and unfavorable aspects of the case. Id. quoting Civ.R. 26(A). Here, through his lack of diligence, appellant did not avail himself of the discovery opportunities to "`prevent surprise'" and to investigate unfavorable aspects of his case.
 {¶ 42} We also reject appellant's assertion that he needed the continuance to obtain an expert witness's affidavit. In support of this assertion, appellant relies on Aglinsky v. Cleveland Builders Supply Co.
(1990), 68 Ohio App.3d 810. In Aglinsky, the trial court initially denied the defendant's summary judgment motion on August 11, 1988. Subsequently, on February 24, 1989, the defendant filed another summary judgment motion with new evidence, an expert witness's affidavit. On this same day, the trial court scheduled a pretrial and trial. On March 3, 1989, the plaintiffs filed a motion to strike the defendant's second summary judgment motion. On March 15, 1989, the trial court granted the defendant's summary judgment motion without ruling on the plaintiffs' motion to strike. Meanwhile, after the trial court had already issued its final judgment, the plaintiffs filed a Civ.R. 56(F) continuance motion on March 17, 1989.
 {¶ 43} On review, the Eighth District Court of Appeals concluded:
Faced with the task of the refiling of defendant's motion for summary judgment supported by new evidence in the form of expert testimony and refiled on the same day the trial court set the case for trial, the trial court sent out confusing mixed signals to plaintiffs, thereby abusing its discretion by failing to rule on plaintiffs' motion to strike. The trial court should have either ruled upon plaintiffs' motion to strike or notified plaintiffs the trial court was reconsidering the granting of defendant's motion for summary judgment. * * *
Id. at 819. Accordingly, the appellate court held, "[p]laintiffs should have been granted more time by the trial court to respond and produce their own expert or investigate other options." Id., citing Tucker.
 {¶ 44} Here, appellant's case does not involve the above "mixed signals" from the trial court and the complex procedural history that caused the appellate court in Aglinsky to conclude that the party opposing a summary judgment motion needed additional time to respond to the motion and obtain an expert witness. As such, we find appellant's reliance on Aglinsky misplaced. We also reject appellant's contention that he needed a continuance to obtain an expert witness by reiterating that appellant's lack of diligence in performing discovery undermines his purported need for a Civ.R. 56(F) continuance. See Doriott at ¶ 47.
 {¶ 45} Based on the above, we conclude that the trial court did not abuse its discretion by ruling on appellees' summary judgment motion without granting appellant's Civ.R. 56(F) continuance motion. Therefore, we overrule appellant's first assignment of error.
 {¶ 46} We next address appellant's remaining assignments of error, which concern the trial court's decision to grant summary judgment in favor of appellees. We apply de novo review to a trial court's decision to grant summary judgment. Sadinsky v. EBCO Mfg. Co. (1999),134 Ohio App.3d 54, 58. Pursuant to Civ.R. 56(C), a trial court grants summary judgment if: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and, after viewing the evidence most strongly in favor of the non-moving party, that conclusion is adverse to the non-moving party. State ex rel. Mayes v.Holman (1996), 76 Ohio St.3d 147, 148. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party.Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
 {¶ 47} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once the moving party meets the initial burden, the non-movant must then produce competent evidence that demonstrates that there is a genuine issue for trial. Id. at 293; see, also American Standard Ins. Co. of Ohio v. Sealey, Franklin App. No. 03AP-1210, 2004-Ohio-4305, at ¶ 5, citing Jackson v. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52 (holding that a party opposing a summary judgment motion must set forth specific facts, by affidavit or otherwise, that demonstrate a genuine triable issue).
 {¶ 48} Here, the trial court considered as opposing evidence the affidavits appellant attached to his Civ.R. 56(F) continuance motion even though appellant did not technically proffer such affidavits to rebut appellees' summary judgment motion. Accordingly, we shall likewise consider such evidence when addressing appellant's remaining assignments of error. See Martinez at ¶ 47.
 {¶ 49} In his second assignment of error, appellant asserts that the trial court improperly concluded that appellant needed an expert witness to rebut appellees' summary judgment motion. Again, we disagree.
 {¶ 50} To establish a breach of duty in a legal malpractice case, expert testimony is required, unless the breach is within the ordinary knowledge of lay people. McInnis v. Hyatt Legal Clinics (1984),10 Ohio St.3d 112, 113; Hahn v. Jennings, Franklin App. No. 04AP-24,2004-Ohio-4789, at ¶ 15, citing McInnis at 113. Thus, a trial court grants summary judgment against a plaintiff asserting a malpractice claim if the plaintiff failed to provide an expert witness in opposition of the summary judgment motion under circumstances where the malpractice was not within a lay person's ordinary knowledge. Compston v. Holzapfel (July 15, 1991), Clermont App. No. CA90-08-079; Hirschberger v. Silverman
(1992), 80 Ohio App.3d 532, 538-539; Hooks v. Ciccolini, Summit App. No. 20745, 2002-Ohio-2322.
 {¶ 51} Here, the trial court recognized that appellant did not proffer expert testimony to rebut appellees' summary judgment motion. Nonetheless, the trial court did not grant summary judgment against appellant on the basis that appellant failed to provide such expert evidence. Rather, the trial court considered appellant's proffered affidavits and concluded that they failed to demonstrate genuine issues of material fact on appellant's legal malpractice claims. Accordingly, we overrule appellant's second assignment of error.
 {¶ 52} In his third assignment of error, appellant argues that the trial court failed to address his claim that appellees committed legal malpractice by not challenging the prosecution's use of "transferred intent" during the conspiracy case. Initially, we note that the trial court briefly addressed this issue by concluding that "[a]ppellant's claims that [appellees] did not properly challenge the prosecution's transferred intent * * * theory `fly in the face of established caselaw.'" Regardless, as noted above, we review appellant's "transferred intent" claim independently and without deference to the trial court's determination. Johnson v. Am. Fam. Ins., 160 Ohio App.3d 392,2005-Ohio-1776, at ¶ 10, citing Brewer v. Cleveland City Schools Bd. ofEdn. (1997), 122 Ohio App.3d 378, 383, and Brown v. Scioto Cty. Bd.of Commrs. (1993), 87 Ohio App.3d 704.
 {¶ 53} In his complaint, appellant alleged that the prosecution told appellees that it "was proceeding with the conspiracy to commit aggravated murder charge against [appellant] under the `doctrine of transferred intent.'" In this regard, according to appellant, the prosecution submitted a jury instruction forwarding this doctrine. As noted above, the jury instruction stated, in part:
* * * If you find that the defendant and his named or unnamed co-conspirator's with prior calculation and design did have a purpose to cause the death of a particular person and that a shot accidentally caused the death of Laura Carter, then the defendant would still be guilty of conspiracy to commit aggravated murder.
 {¶ 54} Appellant maintained that "neither of [appellees] had made any preparation to present an adversarial testing against this doctrine" of "transferred intent." In support, appellant noted that Kaps subsequently told him in a 1994 letter that the doctrine of "transferred intent" did not apply to the conspiracy case. Thus, according to appellant, "had * * * Kaps truly been prepared to present an adversarial testing of the State's case, he would have stressed to the jury the same thing he stressed in his letter where he promised Appellant * * * that Appellant was not tried with utilization of the doctrine of transferred intent."
 {¶ 55} "The doctrine of transferred intent is a theory of imputed liability used in cases such as the `bad aim' case." State v. Scott
(Sept. 21, 2001), Mahoning App. No. 98 CA 124. "By using this doctrine * * * the offender's intent to purposely kill the intended victim with prior calculation and design may be transferred to the actual victim who dies as a result of the bullet meant for the intended victim." Id. Realizing that the above jury instruction provides indications as to how the prosecution tried its case against appellant, we note that the jury instruction did comport with the "transferred intent" doctrine.
 {¶ 56} Nonetheless, analyzing the conspiracy statutes in effect at the time appellant committed the offense, see State v. Young, Ross App. No. 04CA2765, 2004-Ohio-4730, at ¶ 2, fn. 1, we recognize that under the applicable version of conspiracy, R.C. 2923.01(A):
(A) No person, with purpose to commit or to promote or facilitate the commission of aggravated murder * * * shall do either of the following:
(1) With another person or persons, plan or aid in planning the commission of any such offense;
(2) Agree with another person or persons that one or more of them will engage in conduct which facilitates the commission of any such offense.
Am.Sub.H.B. No. 300, 136 Ohio Laws, Part II, 2312.
 {¶ 57} Although the parties involved in the conspiracy must perform "a substantial overt act in furtherance of the conspiracy" under the applicable version of R.C. 2923.01(B), Am.Sub.H.B. No. 300, 136 Ohio Laws II, 2312, nothing in above noted R.C. 2923.01(A) requires the conspirators to actually commit the planned offense, which, here, would have entailed at least one of the conspirators actually murdering the intended victims. See State v. Hairston, 101 Ohio St.3d 308, 2004-Ohio-969, at ¶ 12 (noting that the legislature "should be held to mean what it has plainly expressed"); see, also, applicable version of R.C. 2923.01(E), Am.Sub.H.B. No. 300, 136 Ohio Laws II, 2312, ("[i]n the absence of abandonment, it is no defense to a [conspiracy] charge * * * that no offense which was the object of the conspiracy was committed"); see, also, State v. Fink (Dec. 21, 1992), Fayette App. No. CA92-01-001, citingState v. Marian (1980), 62 Ohio St.2d 250 (recognizing that the conspiracy statute even applies to conspiratorial conduct where only one person intended to achieve the unlawful objective and the other party feigned agreement and at no time intended to go through with the plan).
 {¶ 58} The prosecution's jury instruction, which, again, provides indications on how the prosecution tried its case against appellant, comported with the above conspiracy statutes given that the instruction emphasized that a trier of fact could have found appellant guilty of conspiracy to commit aggravated murder even though a co-conspirator did not ultimately kill the intended victims. Kaps reiterated as much in his 1994 letter to appellant, writing "[a]s long as the State proved you were aware of and did something to promote the common purpose (i.e. to kill off the Cleveland gang), you are responsible for the crime that was committed (i.e. the unintended killing of Laura Carter)[.]" Additionally, in the 1994 letter, Kaps further explained, "[y]our involvement, at least with respect to the killing of Laura Carter, was slight. Under the eyes of the law, however, you are as guilty of that crime as the man who pulled the trigger." Similarly, in his affidavit opposing appellant's "transferred intent" allegation, Kaps reiterated that "[n]o legal distinction existed between [appellant's] purpose in conspiring to accomplish the death of [the intended victims] and the resulting death of Laura Carter[.]" Based on the foregoing, appellees satisfied their burden that they were entitled to summary judgment on appellant's claim pertaining to the prosecution's use of "transferred intent" in the conspiracy case.
 {¶ 59} While appellant may have intended to obtain an expert witness to prove that a genuine issue of material fact existed on the above malpractice claim, appellant failed to do so, and, as noted above, the trial court was not required to provide appellant additional time to obtain such evidence. See Doriott at ¶ 47. Given that appellant provided no other evidence to demonstrate a genuine issue of material fact on the above malpractice claim, we conclude that the trial court did not err by granting summary judgment in favor of appellees on the claim. Thus, we overrule appellant's third assignment of error.
 {¶ 60} In his fourth assignment of error, appellant contends that the trial court erred by granting summary judgment without considering undisputed facts that appellant contends he listed in his complaint. In particular, appellant first claims that it is undisputed that appellees committed legal malpractice by not obtaining February 1985 recordings of law enforcement interviews with prosecution witness Jack Raymond. Appellant argues that the recordings would have demonstrated that Raymond's testimony during the conspiracy trial was inconsistent with his statements in the February 1985 interview. Thus, according to appellant, appellees could have used the February 1985 recording to impeach Raymond's testimony during the conspiracy trial.
 {¶ 61} However, "[t]he scope of our review on appeal is confined to matters within the record transmitted from the trial court." Meadows v.Freedom Banc, Inc., Franklin App. No. 03AP-1145, 2005-Ohio-1446, at ¶ 23, citing App.R. 12(A), App.R. 9 and Lamar v. Marbury (1982),69 Ohio St.2d 274. We "can take no notice of facts or circumstances brought to our attention by means of affidavits or other evidence not appearing in the record" and not "before the trial court at the time it rendered its judgment." Meadows at ¶ 23. Here, appellant attached to his merit and reply briefs exhibits to support the above issue, but did not present them for the trial court's consideration. Thus, under Meadows, we "can take no notice" of the exhibits, and, consequently, appellant's issue concerning Raymond's 1985 recorded interviews lacks evidentiary support. Id. at ¶ 23.
 {¶ 62} Likewise, while appellant alleged in his complaint that appellees committed legal malpractice by failing "to obtain tape recordings made by the State's key witness," appellant made no specific mention of the above issue after appellees filed their summary judgment motion. We need not consider this issue, which appellant failed to bring before the trial court after appellees filed their summary judgment motion. Collins v. Emro Marketing Co. (May 11, 1999), Franklin App. No. 98AP-1014; Sealey at ¶ 10.
 {¶ 63} Next, appellant argues that it is undisputed that appellees committed legal malpractice by failing to discover credibility issues relating to prosecution witness Michael Brown's testimony during the conspiracy trial. In support, appellant relies on Brown's 1990 affidavit wherein Brown claimed that "he was under the influence of mind-altering drugs" when he testified in appellant's conspiracy trial. In addition, Brown stated that he had "a strong feeling that his testimony" in the conspiracy trial "was a product of suggestions given to him by certain prosecuting witnesses while he was also under the influence of mind-altering drugs."
 {¶ 64} Again, appellant attached Brown's affidavit to his merit brief, but did not present it for the trial court's consideration. Thus, under Meadows, we "can take no notice" of the exhibits, and, consequently, appellant's issue concerning Brown's testimony lacks evidentiary support. Id. at ¶ 23. Likewise, we need not consider the issue because appellant did not raise it to the trial court after appellees filed their summary judgment motion. Collins; Sealey at ¶ 10.
 {¶ 65} In addition, appellant maintained in the complaint that appellees committed legal malpractice by not testing for tampering a recorded interview between appellant and Detective Young. Although the federal court excluded the recording from evidence during the federal trial, the state trial court allowed the prosecution to use the recording during the conspiracy trial. In raising the above legal malpractice claim, appellant contended that "[t]his tape recording in audio-cassette form was 45 minutes in length when it was presented in the [federal case]. However, when it was presented in the [state case], the tape-recording became 34 minutes in length." Appellant stated that "exculpatory content and [a] promise not to prosecute was removed from the original tape[.]"
 {¶ 66} Initially, we note that appellant provided no indication as to what "exculpatory content" was removed from the original tape. Based on the record, appellant merely speculates that the tape was tampered with in this fashion, and such speculation does not create a genuine issue of material fact. See Zacks v. Beck, Franklin App. No. 04AP-1364,2005-Ohio-4567, at ¶ 29.
 {¶ 67} We next address appellant's claim that the "promise not to prosecute was removed from the original tape[.]" In support, appellant proffered affidavits from himself and Holland indicating that the recording was originally 45 minutes in length. Appellant also proffered statements from Holland and Roberts that indicated that they heard an employee from the Franklin County Prosecutor's Office tell a co-worker that "`[t]hey know it's not the original tape and they're trying to get it examined, and that would result in opening up a huge can of worms.'" Appellant also proffered a letter from the Franklin County Prosecutor's Office indicating that it "appear[ed]" that the recorded conversation used as evidence during the conspiracy trial "was not the original."
 {¶ 68} While appellant may have created a question of fact as to the length of the tapes, appellant has failed to present an issue ofmaterial fact as to the issue of professional judgment as Dresher
requires. Id. at 293. Specifically, appellant has not established an issue of material fact as to whether appellees acted unreasonably and committed legal malpractice by not testing the tape for tampering. SeeHolley v. Massie (1995), 100 Ohio App.3d 760, 764, citing McInnis
(noting that legal malpractice exists, in part, when an attorney fails to perform to the standard of professional care as required by law).
 {¶ 69} In particular, appellees demonstrated that they exercised reasonable judgment in not testing the tape for tampering. Benna v.Slavin (Dec. 18, 2000), Cuyahoga App. No. CV-381241. They knew the tape was incomplete, as evinced by Sheeran's affidavit and Detective Young's testimony, and they concluded the promise not to prosecute came before any taped interview, as evinced by Kaps' affidavit and appellant's own testimony indicating that law enforcement made the alleged promises during a "pre-meeting" "[b]efore the start of this tape[.]"
 {¶ 70} Appellant provided no evidence to counter appellees' demonstrations that they exercised professional judgment and did not commit professional malpractice by not testing the tape for tampering. Thus, appellees provided sufficient evidence to support summary judgment on appellant's tampering claim, but appellant failed to create a genuine issue of material fact on the issue.
 {¶ 71} We next examine appellant's assertion that it is undisputed that appellees committed legal malpractice by "not argu[ing] double jeopardy and/or collateral estoppel once it was determined that the conduct for which [appellant] had been acquitted in the [federal case] would come [into] play" during the conspiracy trial. When we previously reviewed the trial court's denial of appellant's post-conviction relief motion, we recognized that "under the dual sovereignty doctrine, a federal conviction or acquittal pose no bar to a state prosecution and a defendant's prosecution in the second forum is, therefore, not double jeopardy." Whiteside, citing State v. Fletcher (1971), 26 Ohio St.2d 221, syllabus. We further held that "[c]ollateral estoppel, which requires mutuality of parties, is likewise inapplicable because the state of Ohio was not a party to the federal prosecution." Whiteside, citing State v.Brown (1981), 2 Ohio App.3d 321, 322-323. Thus, we conclude that appellees had no basis to raise the double jeopardy and collateral estoppel issues as appellant has proposed, and we conclude that the trial court did not err by granting summary judgment for appellees on the double jeopardy and collateral estoppel claims.
 {¶ 72} Similarly, appellant maintains that it is undisputed that appellees committed legal malpractice by not mentioning his acquittal on the federal charges to the jury in the conspiracy case. However, appellant provided no evidence to demonstrate this assertion as a genuine issue of material fact, and, "[i]n general, evidence of a prior acquittal is only relevant in determining whether the prosecution is barred by double jeopardy or collateral estoppel." United States v. Jones (C.A.7, 1986), 808 F.2d 561, 566, citing United States v. Viserto (C.A.2, 1979),596 F.2d 531, 537. Therefore, we conclude that the trial court did not err by granting summary judgment for appellees on the above claim.
 {¶ 73} Accordingly, we reject appellant's contention that the above claims remained undisputed in appellant's favor to preclude the trial court from granting summary judgment to appellees. As such, we overrule appellant's fourth assignment of error.
 {¶ 74} In his fifth assignment of error, appellant claims that the trial court made credibility determinations on the evidence and "took the word of Appellees based solely upon credibility[.]" In raising this argument, appellant specifically asserts that the trial court improperly rejected affidavits from Holland and Roberts. We disagree.
 {¶ 75} A court cannot weigh credibility when considering evidentiary material presented in favor of, or in opposition to, a summary judgment motion. Killilea v. Sears, Roebuck Co. (1985), 27 Ohio App.3d 163,167-168; Prysock v. Bahner, Franklin App. No. 03AP-1245, 2004-Ohio-3381, at ¶ 10, citing Killilea at 167-168. "Issues of credibility of affiants are not issues properly decided or disposed of by a motion for summary judgment." Aglinsky at 817.
 {¶ 76} Here, contrary to appellant's assertions, the trial court did not reject the affidavits from Holland and Roberts upon assessing their credibility. Rather, the trial court recognized that the affidavits conveyed inadmissible hearsay that it need not consider. See Evid.R. 801; Evid.R. 802; Felker v. Schwenke (1998), 129 Ohio App.3d 427, 431
(holding that a party may not rely on inadmissible hearsay when opposing or supporting summary judgment). The trial court further noted that the affidavits failed to "proffer specific facts or testimony that [appellees] failed to perform to community standards in criminal practice." The trial court's conclusion is based on the merits of the affidavits and not based on a credibility determination of the affiants. Indeed, we likewise concluded above that the affidavits from Holland and Roberts failed to establish a genuine issue of material fact. Accordingly, we overrule appellant's fifth assignment of error.
 {¶ 77} In summary, we overrule appellant's first, second, third, fourth, and fifth assignments of error. Therefore, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
McGrath and Christley, JJ., concur.
Christley, J., retired of the Eleventh Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.